### PURDY et ux. v. GROVE.
### No. 795.

Court of Civil Appeals of Texas. Eastland.

Feb. 6, 1931.

**Rehearing Denied March 6, 1931.**

J. R. Stubblefield, of Eastland, for appellants.

Turner, Seaberry & Springer, of Eastland, for appellee.

LESLIE, J.

J. O. Grove sued J. T. Purdy and wife, Lillie Purdy, on a note and to foreclose a deed of trust lien securing the same on lot 7, block 15, in the town of Gorman, Eastland county, Tex. Recovery was resisted on the ground that the lien was void as an attempt to mortgage the homestead, and that the defendants had been adjudged bankrupts. At the conclusion of the testimony the trial court instructed a verdict for the plaintiff, and, from the judgment thereon, establishing the debt and foreclosing the lien, the defendants appeal.

■ This appeal is predicated on five propositions of law, and the first four present, from different angles, that the judgment is erroneous in granting the foreclosure of a deed of trust lien shown to be void as an attempt to unlawfully create a lien against the family homestead. The propositions will be considered together.

For many years prior to the execution of the note and deed of trust in suit, J. T. Purdy and wife resided in Gorman, Tex., occupying a family residence and maintaining a business homestead on said lot 7 separate and disconnected from that on which was situated the residence. At least such was unquestionably so down to about August or September, 1924; the first date being about the time the Purdys purchased a residence in Abilene, Tex., and the latter date being the time at which it was occupied by Mrs. Purdy and her daughters. Mrs. Purdy took with her sufficient furniture and fixtures from the Gorman residence to equip the Abilene residence for housekeeping and family purposes. She, together with the daughters, remained at Abilene from September, 1924, to August, 1927, during which time educational advantages were being given the children. At week-ends she paid return visits to Gorman, where her husband remained, conducting a garage business. During said time he made regular visits to the Abilene residence. After the daughters finished their educational work at Simmons University, the mother returned to Gorman, and the family as a whole reoccupied the old home, which had in the meantime been rented to different parties and was so rented on the date of the note and mortgage in question. Mr. Purdy had reserved for himself the use of two rooms in the residence. During the absence of Mrs. Purdy, no meals were served by the family in the Gorman residence and no cooking utensils were retained for that purpose.

From the standpoint of the Purdys, suffice it to say that, in their testimony on the trial, they claimed never to have abandoned their homestead at Gorman, including lot 7, and that it was such at the time they obtained the loan from Grove and undertook to secure the same with a purported deed of trust thereon. However, we find that no effect can be given to these claims because of other and conclusively established facts. To obtain the loan, Purdy represented to Grove that he could se-

cure it with a valid lien on lot 7, and that it was no part of the family homestead. Such representations were believed by Grove, relied on and acted on by him, and he was thus induced to make the loan evidenced by the note and the lien forming the basis of this suit. By way of inducement, Purdy stated to Grove that he owned "more land than the law allows to be exempt from forced sale"; that he owned a lot with garage on it in Sipe Springs, Comanche county, Tex.; that he owned a residence and garage in Gorman, each on separate lots; that he owned a lot and residence in Abilene. In testifying, he referred to the Abilene property in this language: "When Mrs. Purdy moved to Abilene she took enough furniture to furnish the home." Further, in explaining how the Abilene home came to be designated as their homestead, he testified: "I don't suppose either of them, (Grove or his attorney) knew what land the home was on in Abilene. I went up there and looked up the description and told them it was my homestead." Also, " * * * I wanted to designate a home." He further stated to Grove that his wife and members of his family were residing there, and this was at a time when the Gorman residence was rented. By way of further inducement of the loan, the Purdys duly acknowledged and recorded an instrument designating the Abilene property as their homestead, and in it they recited that they "own and are possessed of more land and real estate than is by law exempt to a family from forced sale." On the same day, January 8, 1925, J. T. Purdy and wife executed and delivered to Grove the note and deed of trust involved in this suit, and in the latter instrument is found this covenant: "Grantors herein expressly waive any homestead claim to the above described property, and state that they have designated that certain lot or parcel of land situated in the city of Abilene, Taylor County, Texas (here follows particular description of the property) as their homestead, and represent to the said J. O. Grove that they waive all rights to the above described property or any property whatsoever located in the city of Gorman as their homestead."

Notwithstanding the fact that J. T. Purdy, appellant, was staying at Gorman, as claimed in his testimony, and working in the garage on lot 7, and sleeping in a room reserved at the old residence, we conclude that the foregoing undisputed facts and circumstances, viewed from the standpoint of Grove, the appellee, created an ambiguous situation, as such is designated and described by our Supreme Court in an opinion by the Commission of Appeals in Carstens et al. v. Landrum et ux., 17 S.W.(2d) 803, 804, involving the true location of the Purdy homestead, and that such situation embodied all the elements of a complete estoppel as against the right of the Purdys to assert that their homestead was other than the residence and lot situated in Abilene and designated by them as their homestead in the foregoing instruments and on all other occasions while negotiating for the loan.

As the situation presented itself to Grove, the Purdys, at the time of the loan, owned and occupied a family residence on the lot in Abilene; also they owned a residence and place of business, each on different lots, in Gorman. The residence at Gorman, as noted, was rented to other parties, with the reservation of a room. They owned a lot with garage thereon in Sipe Springs. Clearly, as represented, Purdy did own real estate not protected from forced sale as exempt property. From outward appearances at the date of the loan, it could have been argued plausibly that the Purdys had a homestead in Abilene or that their homestead was in Gorman.

Further, the Abilene residence and lot lacked nothing in occupancy and use, the elements given paramount, if not controlling, effect in determining the homestead character of property claimed as exempt. Speer's Law of Marital Rights, p. 553, §§ 460, 461.

As compared with the occupancy and use being made of the Gorman property at the time of the loan, the use and occupancy of the Abilene property were at least equally if not more pronounced as evidence of homestead rights.

The above are the salient facts forming the background of the obligation and lien here involved. The controlling question to be considered is whether the recitals in the deed of trust, the homestead designation, and the foregoing undisputed surrounding circumstances estop the Purdys to assert the homestead character of lot 7, block 15, at the time of the loan and the creation of the lien, and thereby defeat the object of this suit for the foreclosure of that lien. As said in Carstens v. Landrum, supra: "It is no longer an open question in this state that, where the tangible facts respecting two places are such that the homestead character will attach to either, to the exclusion of the other, according as the husband and wife intend, a declaration by the spouses of their intentions in this respect may estop them from disputing the truth of the declaration. Parrish v. Hawes, 95 Tex. 185, 66 S. W. 209."

The instant case is a strong one for the application of the rule stated. Therefore, as said in the authorities cited, and adapting the language of that opinion to the facts here, it becomes necessary to consider the tangible facts relating to the Gorman property and the Abilene property, as those facts existed at the time the transaction occurred in which the deed of trust in question and the instrument designating the Abilene homestead were

executed. Discarding from consideration the real intentions which Purdy and wife had in mind, it could not be said that the use and occupancy of the Gorman property were of such a nature as to show conclusively that that property was in law and 'in fact their homestead when these transactions took place. Whether it was or not depended upon their real intention, which they could change at will, and which nobody could know but themselves. In the same transaction in which they declared an abandonment of the Gorman property as a home, they designated a new place, the Abilene property, suitably improved, which they declared was their home and intended to be so used as such, which they had acquired a considerable time prior thereto (August, 1924), and which had in fact been occupied by the wife and daughters since about September 15, 1924. In view of the ambiguous circumstances under which the Gorman property (that here involved) was being used and occupied by a part of the family (Purdy), and the fact of the prior occupancy of the Abilene property by the wife and daughters, there can be no doubt that the latter place, the Abilene property, would be treated as having become the family home and protected as such at the very time of said transaction, if the real intention of Purdy and wife had corresponded to their declarations of intention as contained in the deed of trust and the homestead designation. Gardner v. Douglass, 64 Tex. 76; Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832.

In thus applying the language of the opinion in the Landrum Case to the facts in the instant case, it is obvious that the difference, if any, is decidedly in favor of the conclusion that the instant case is a stronger one on the facts going to establish an estoppel against Purdy and wife to deny the truth of their solemn declarations that the Abilene property was their homestead at the time of the loan. We cite, as an additional authority for these conclusions, Llewellyn et ux. v. First National Bank of Lampasas (Tex. Civ. App.) 265 S. W. 222.

■■ Of course, the business homestead is but a part of the one urban homestead exempted by law to those entitled to the same. Miller v. Menke's Widow & Heirs, 56 Tex. 539; Speer's Law of Marital Rights, p. 548, § 459. Also there can be but one residence homestead at a given time. Archibald v. Jacobs, 69 Tex. 248, 6 S. W. 177; Johnston et al. v. Martin, 81 Tex. 18, 16 S. W. 550; Grimes v. Cline (Tex. Civ. App.) 300 S. W. 235.

■ In other words, the business and residence homestead in a city, town, or village is a unit, the one urban homestead, and, it conclusively appearing that the appellants had established their residence homestead in Abilene, we conclude that it drew to it what is commonly termed a business homestead, if any; that is, in any event, the lot here in question, once a part of the homestead when the Purdys resided in Gorman, ceased to be a part thereof under the circumstances recited, and became subject to the deed of trust lien. This follows for the reason that the Purdys could not maintain a business homestead in Gorman, Eastland county, Tex., and a residence homestead in Abilene, Taylor county, Tex., the two places being disconnected urban communities, some 82 miles apart, and the county of Callahan lying between Taylor and Eastland counties.

We find no opinion by our Supreme Court on this point, nor by any appellate court in Texas. The question, however, has been decided by a federal Circuit Court of Appeals in the case of Robinson v. Eikel, 285 F. 732, 734. There Eikel contended that, under the homestead exemption laws of Texas, he was entitled to a residence homestead in New Braunfels, Comal county, Tex., and a business homestead at Taylor, Williamson county, Tex. In a bankruptcy proceeding, the claimed exemption was upheld by the district court in an opinion to be found in 283 F. 285, but that holding was overruled by the Circuit Court, and the exemption disallowed in the opinion first cited. A writ of certiorari was denied by the Supreme Court of the United States. We do not undertake to restate here the reasons assigned by the Circuit Court for the holding made. They are clearly set forth in the opinion. We consider them sound and the opinion sufficient authority for this ruling. We direct attention to the concluding part of that opinion, which is in this language: "* * * The urban homestead provided by the Constitution of Texas contemplates a lot or lots used for the purposes specified in such Constitution *located in one urban community, whether governed by one or more municipal bodies, and not a lot or lots situated in widely separated urban communities.*" (Italics ours.)

That statement is a significant one, and indicates that municipal boundary lines in such cases, like the corporate existence of a city, town, or village, are unimportant considerations in determining the location of or the right to claim the urban homestead, or a part thereof.

In the case of Williams v. Willis et al., 84 Tex. 398, 19 S. W. 683, 684, our Supreme Court held that urban property situated in unincorporated towns and used as a place of business by a person also owning and residing at a homestead outside of the town limits, and not contiguous to the urban property, is no part of a homestead and is subject to execution. There it was contended that, within the meaning of the law, San Saba was not a town, because unincorporated, and that for this reason the property in controversy, as

well as that on which appellant resided, was rural, and that he was entitled to hold both as a rural homestead. The court said: "To constitute San Saba a town, within the meaning of the constitution, it is not necessary that it be incorporated"—citing Iken v. Olenick, 42 Tex. 197; Hargadene v. Whitfield, 71 Tex. 482, 9 S. W. 475.

■■ Evidently, as used in this provision of the Constitution (section 51, art. 16), "a city, town, or village" means "an aggregation of inhabitants and a collection of occupied dwellings and other buildings." State ex rel. Wilke v. Stein et al. (Tex. Com. App.) 26 S.W.(2d) 182, 184. There would appear to be no legal obstacle to a family residence homestead being located in Dallas and a business homestead in connection therewith in Highland Park; the two adjoining municipalities being separated merely by a corporate line. The test would be, Are the parts of the one homestead located in one urban community?

Further, the language of the constitutional provision (section 51, art. 16) defining urban homestead excludes the idea that it may be constituted by what is spoken of as a residence homestead in one city, town, or village, and a business homestead in another and disconnected city, town, or village, both existing at the same time. The language of the provision is: "The homestead in a city, town or village, shall consist of lot or lots, not to exceed in value, * * *" etc. This language is simple and not open to construction. It created a definite right and restricted its enjoyment to a definite locality. Such restrictions and limitations may not be disregarded for expediency or convenience.

In the case of Parks et al. v. West, 102 Tex. 11, 111 S. W. 726, 727, our Supreme Court, in determining whether or not it was within the power of the Legislature, under the Constitution, to incorporate school districts for free school purposes only, composed of parts of two or more counties, held that the power given to the Legislature by the Constitution (article 7, § 3, Amendment 1883) to provide by general or special law "for the formation of school districts within *all or any of the counties* of this state" with power for local taxation for school purposes did not authorize the creation of an independent school district *embracing territory lying partly within one county and partly within another.* The language of the opinion simply forbids the doing of the thing attempted, and the reason for the court's holding is very clearly stated in that opinion, and is applicable to the situation here.

We also cite in support and confirmation of the conclusions relating to the business homestead, Nunn on Exemptions, p. 125, an excellent text recently published. In discussing limitations, (a) to (h), under which property may be impressed with the homestead character, the author states:

"* * * (b) That there can be but one residence homestead.

"(c) That he can have but one business homestead, and such place of business is limited to one place.

"(d) That the business homestead or place of business, together with the urban residence homestead, must be located in the same city, town or village, in that the two together constitute but one homestead. * * *"

It follows that the four propositions under consideration are overruled.

■ The appellants' remaining proposition is overruled. It is to the effect that, Purdy and wife having filed petitions in bankruptcy, the district court of Eastland county was without jurisdiction to determine the issues involved in this suit. In the judgment appealed from, the court merely established the indebtedness, foreclosed the deed of trust lien, and refused to grant personal judgment against the appellants. The note was payable in Eastland county; the land foreclosed on situated there. The petition for foreclosure was filed in the district court of Eastland county December 31, 1929, and J. T. Purdy filed his voluntary petition in bankruptcy January 8, 1930, and Mrs. Purdy hers on March 20, 1930. The judgment appealed from was rendered March 21, 1930, and no official of the bankrupt court intervened in the proceedings of the court below or expressed any dissatisfaction therewith. In such state of the record the trial court had jurisdiction to hear and determine the suit and to enter its decree of foreclosure. Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403; Remington on Bankruptcy, Third Edition, vol. 5, p. 102, § 2048; Belcher Land Mortgage Co. v. Bush (Tex. Civ. App.) 67 S.W. 444.

For the reasons assigned, the judgment of the trial court is affirmed.