## NATIONAL LOAN & INVESTMENT CO. v. L. W. PELPHREY & CO.

### No. 797.

Court of Civil Appeals of Texas. Eastland.

Feb. 13, 1931.

Rehearing Denied June 19, 1931.

E. E. Solomon, of Breckenridge, and J. H. Synnott, of Dallas, for appellant.

Bailey W. Hardy, of Breckenridge, for appellee.

LESLIE, J.

This is an appeal from an order of the trial court dissolving a temporary injunction restraining the sheriff of Stephens county from selling lots 8 and 9, block 15, Hanks second addition to the city of Breckenridge, Tex., previously levied on by the sheriff under orders of sale based on judgments in favor of L. W. Pelphrey & Co. against certain defendants who are not parties to this suit. The petition for injunction, in substance, sets forth that said loan company had lent money to the original owner of said lots and taken a deed of trust thereon to secure the payment thereof. That after the loan was made, and the deed of trust duly recorded in the deed of trust records of the county, Pelphrey & Co. paved a street alongside the lots, and the city of Breckenridge issued two separate paving certificates against the lots, one for each lot, and each for $162.50, bearing interest. Such certificates were issued by virtue of the authority granted by articles 1086 to 1096, inclusive, and articles 1104 and 1105, Vernon's Annotated Texas Civil Statutes, 1925. Article 1090 provides, among other things, that: "Such assessments shall be secured by, and constitute a lien on said property, which shall be the first enforcible claim against the property against which it is assessed, superior to all other liens and claims, except state, county and municipal taxes."

The statute makes this a first lien to secure the payment of the obligation evidenced by the paving certificates, with interest and reasonable attorney's fees in case of default in payment of installments, and collection is by suit. Default was made, and the entire indebtedness was, under the option given, de-

clared due. The paving company filed two suits, one on each obligation, and for foreclosure of the statutory lien. Each suit was against the same parties and the indebtedness evidenced by each certificate was $162.95.

The loan company, appellant here, was not made a party to either suit. The suits were tried and resulted in a judgment in each case for the amount evidenced by the certificates, plus (1) $25 attorney's fees in each case, allowed an attorney appointed by the court to represent a defendant cited by publication; (2) $100 in each case, allowed the attorney of the paving company as a reasonable attorney's fees; (3) other general costs in each suit, amounting to $121.65.

The loan company is here contesting, as unreasonable and unauthorized, such attorney's fees and costs. Its particular contention is that the purpose of the litigation could and should have been accomplished by one suit, thus eliminating all the costs and attorney's fees in an unnecessary suit. That under article 2060 of the Revised Statutes, regulating costs in suits which should have been joined, the two suits in question should have been consolidated and at least one-half of the costs saved thereby. The plaintiff states its contention concisely thus: "That being a lienholder for more than the worth of the property, it has a right to be heard as to the amount it shall pay; that this is a direct suit to set the other judgment aside; that it has shown a meritorious defense to part of the judgments, and that it is entitled to a verdict of the jury thereon."

The petition in each original suit declared on an indebtedness of $162.95, with interest, and for foreclosure, and from the foregoing it appears that the attorney's fees and costs to date in each suit aggregate $221.65. In both suits these items aggregate $443.30. From this it is obvious that it becomes imperative that the loan company, if it would protect its security, pay off the superior claims (evidenced by the certificates), together with the costs accruing in such foreclosure suits. This is the foundation of its present complaint, and, under the theory on which this injunction was sought, it is recognized that the appellant does not offer any contest of that portion of the original judgments decreeing the amount of indebtedness due for the paving itself and establishing the paving liens as first claims against the property. The object of this suit appears to be for the sole purpose of reducing attorney's fees and costs to what would be proper and reasonable, had the original suits been prosecuted as one.

In addition to the above contentions, the appellant alleges that, by an agreement between itself and the paving company, it was the duty of the latter to notify it that the paving liens were in arrears, and, before filing

928

suit and incurring any costs, give it an opportunity to pay off and take over the superior obligations; that the paving company knew it would pay the liens and save the costs, if notified; that it was not notified of the delinquency, nor made a party to the suits.

A dissolution of the injunction was sought and had on some or all of the following grounds: (1) That the loan company was not a party to the two original suits, and, therefore, had no interest in the subject-matter of, or judgments in, said suits; (2) the proceeding was a collateral attack on said judgments; (3) no meritorious defense was shown; and (4) that there was no agreement, as alleged, not to bring the two suits in question.

We are of opinion that the contention that the paving company agreed to notify the loan company of any default in payment of these particular certificates is not supported by the testimony. This suit was instituted several months prior to the date on which it is alleged the agreement was made. Appellant's general attorney testified in the case and made no mention of such an agreement and reliance thereon.

That the paving company's lien is a first enforceable claim against the two lots, and therefore a superior lien to appellant's, seems to be conceded. Article 1090, above quoted, makes it so, and such is the holding in Marriott v. Corder et al. (Tex. Civ. App.) 4 S.W.(2d) 213.

The appellee, Pelphrey & Co., seeks to uphold the judgment dissolving the injunction on the grounds that the appellant, being a junior or subordinate lienholder, was not a necessary party to the two original suits foreclosing the paving liens, and that the appellant, after such foreclosures, merely stands in the position occupied by other parties who have held inferior or junior liens while the superior lienholder foreclosed. Such authorities as Milmo Nat. Bank v. Rich, 16 Tex. Civ. App. 363, 40 S. W. 1032, 1033; Reagan v. Evans, 2 Tex. Civ. App. 35, 21 S. W. 427; and Silberberg v. Pearson, 75 Tex. 287, 12 S. W. 850, are cited as holding that junior lienholders are proper but not necessary parties, and that, while the holder of a superior lien in a foreclosure suit might, if he saw proper to do so, join them as parties, yet if he did not do so, their rights, if any, remained unaffected by the judgment. Appellee's contention is reflected by a quotation in its brief, taken from Milmo Nat. Bank v. Rich, supra: "In the present case the first mortgage was foreclosed by a judicial decree, without the joinder of the second mortgagee, and hence without any reference to or effect upon his rights. His position is unchanged by such sale, and his remedy after such sale is precisely what it was before; and that is to

foreclose his lien on the land, subject to the rights held under the first mortgage."

To the same effect is McDonald v. Miller et al., 90 Tex. 309, 39 S. W. 89, 94, wherein it is said: "The rule is announced, by all the authorities, that a junior incumbrancer who is not made a party to a suit to foreclose a prior mortgage or lien is not affected by the judgment in such suit."

From these premises the appellee reasons that the loan company, not being a party to the foreclosure suits nor a necessary party to the same, and not being bound by the judgments therein, it is a stranger to said suits and has no interest therein, and therefore is in no position to have said judgments set aside, or to enjoin the sale of the interest of said defendants in said judgments.

It may be conceded that the appellant was not a necessary but merely a proper party to the original litigation, but to bind it and its interest in the subject-matter of those suits, it was necessary for it to have been made a party thereto. It is a stranger to those suits and these respective judgments, but for the purpose of this suit that fact is a source of strength and advantage to it. Thus situated, and bearing such relation to the original judgment, it approaches and attacks each of them under and by virtue of the rule of law governing collateral attacks by strangers, as clearly stated in 34 C. J., p. 526, § 832: "A stranger to the record, who was not a party to the action in which the judgment was rendered nor in privity with a party, is not prohibited from impeaching the validity of the judgment in a collateral proceeding; but in order to do so he must show that he has rights, claims, or interests which would be prejudiced or injuriously affected by the enforcement of the judgment, and which accrued prior to its rendition, unless the judgment is absolutely void."

To the same effect is Freeman on Judgments, vol. 1, p. 636, § 319. Each text cites numerous authorities from many jurisdictions in support of the rule. Freeman lists one Texas case, Heard v. Vineyard (Tex. Com. App.) 212 S. W. 489, and C. J. cites the Texas case of Turner v. Maury (Tex. Civ. App.) 224 S. W. 255. To these we add McDonald v. Miller, et al., supra, and also cite 34 C. J., p. 1017, § 1441.

In Beatty v. Davenport, 45 Wash. 555, 88 P. 1109, 1111, 122 Am. St. Rep. 937, 13 Ann. Cas. 585, a stranger to the record in the original suit was permitted to attack the judgment therein. In its opinion, the court used this language: "A rule otherwise would permit a man to be condemned unheard, or his property taken without notice, which, of course, is contrary to the plainest principles of law or justice. The basis of the rule that a judgment regular upon its face cannot be attacked collaterally is that there has been

an adjudication of the question between the parties. Where it appears from the face of the record that a party interested was not before the court, and had no notice or opportunity to be heard, the rule does not apply. Such parties may be heard upon questions of both law and fact as fully as though no judgment had been rendered."

An examination of the contentions presented by this record discloses that the appellant, the loan company, comes squarely within the rule of law stated. Its lien against the lots being foreclosed on evidences a pre-existing right to that of the appellee's, although it is made subordinate by the statute cited. It is also made to appear, from the pleadings and the testimony, that the lien held by the appellant, under and by virtue of its deed of trust, constitutes such a right, claim, or interest in the subject-matter of the two foreclosures as will be prejudiced or injuriously affected by the enforcement of those judgments, in the event the costs and attorney's fees included therein and contested by this appellant are in fact unnecessary, unreasonable, and unauthorized by law. Certainly, if the lots are sold under said executions, the costs herein challenged will be carried forward by the judgment and sale and made a part of the incumbrance the appellant must lift in order to protect itself and its security.

■■ We do not know, and are not concerned with, what á trial on the merits of this case will disclose. Nor do we express any opinion on the reasonableness of the attorney's fees; but the point is, upon the pleadings and the testimony before us, the appellant at least makes a prima facie showing of such rights as entitles it to be heard upon the issues of fact presented by its petition for injunctive relief. Braly v. Webster (Tex. Civ. App.) 4 S.W.(2d) 580, and authorities there cited.

We hold that the appellant showed a prima facie meritorious defense to at least a part of each judgment, and that is sufficient. As said in 34 C. J. p. 339, § 552, "It is not necessary that defense should go to the entire action; it is sufficient if it purports to defeat any substantial part of the plaintiff's claim."

If, upon another trial, the appellant shows itself able to eliminate any of the attorney's fees and costs, or any portion thereof, the method of procedure in such event would be, in principle at least, that indicated in the opinion in Safe-Deposit Co. v. Wright (C. C. A.) 105 F. 155, 158. There the judgment was attacked for fraud, and the court says: "It has become a well-settled rule, therefore, that subsequent creditors and plaintiffs in junior judgments may collaterally impeach the senior judgment as having been entered or obtained by collusion between plaintiff and defendant, with intent to defraud or hinder such subsequent creditors. In such case, if the impeachment be successful, the effect is not to vacate the judgment, but only to disallow its interfering lien, so far as such subsequent creditors are concerned, leaving it in force as between the original parties, and for all other purposes."

As applied to the instant case, a tender of the amount due the appellee, as evidenced by the paving certificates, together with such attorney's fees and costs as may be ascertained to be proper in the trial, will entitle appellant, the loan company, to a full discharge of the superior incumbrance on its security. We interpret its pleadings as making such tender.

In other respects, the original judgment, as between the parties thereto, will remain undisturbed.

In passing on the issues before us, we have deemed the pleadings sufficient to allege the insolvency of those who executed and delivered to the appellant the note which it holds and alleges to be secured by the deed of trust. The pleadings are not as clear in this respect as they should be, for it is apparent that if they are solvent the appellant might not be entitled to the relief herein sought. This is said in view of the final trial.

For the reasons assigned, the judgment of the trial court dissolving the temporary injunction is reversed, and the cause remanded for a trial on the merits.