**FARMERS' NAT. BANK OF DUBLIN v. CARMONY et ux.**

**No. 1124.**

Court of Civil Appeals of Texas. Eastland.

May 26, 1933.

Rehearing Denied Sept. 15, 1933.

R. L. Thompson, of Stephenville, for appellant.

J. A. Johnson and Oxford & McMillan, all of Stephenville, for appellees.

FUNDERBURK, Justice.

On June 16, 1930, C. C. Carmony executed and delivered his note for $5,000 to Farmers' National Bank of Dublin, and to secure same gave a deed of trust (also joined in by his wife) on lot No. 14, block 6, in the city of Dublin. The note and deed of trust were given in renewal of a note and deed of trust upon the same property dated July 30, 1929; the former lien being expressly continued. The deed of trust in suit, as well as the original deed of trust, contained this recital: "We warrant that the above described lot constitutes no part of our legal homestead and is not occupied, used or claimed by us as such." In defense of this suit brought by said Farmers' National Bank upon the note and to foreclose the deed of trust lien, the defendants urged the invalidity of the lien on the ground that said property was, at the date of the deed of trust, their business homestead. In reply to this defense, the bank pleaded (a) that the use of said property as a business homestead, if it had ever been such, was abandoned in 1922, when a

partnership between Wray and Carmony was formed, and said lot leased by Carmony to the firm of Wray & Carmony; (b) that from 1922 to about 1926 the business homestead of Carmony consisted of other property upon which an ice plant owned by him was located; (c) that at the date of the execution of the deed of trust Carmony owned lot 5, block 2, and a one-half undivided interest in other lots; that said lot 5, block 2, was adapted as a business homestead; (d) that Carmony's business was the cotton compress business, and the lot in question, not being used in said business, was therefore not business homestead; (e) that by reason of the ownership and suitableness of said lot 5, block 2, and the fact of Carmony being engaged in the cotton compress business, and the representation in said deed of trust that the lot in question was not used as a homestead, Carmony was estopped from asserting its exemption; and (f) that the property upon which the ice plant was situated was Carmony's business homestead, and that his business was the ice business and cotton compress business, and other lines of business having no connection with the lot in question. Upon a nonjury trial, the court below gave judgment for plaintiff on the note, less certain credits, but denied a foreclosure of the alleged lien.

Pending the suit, and before trial, plaintiff ran a garnishment against Geo. H. Wray, a partner of Carmony. The garnishee answered, denying indebtedness to Carmony and the possession of any effects belonging to him. The answer of the garnishee, however, disclosed the existence of money and property belonging to the partnership of Wray & Carmony, and also alleged an indebtedness due by Carmony to garnishee. By agreement the garnishment suit was consolidated with the original suit and both tried as one.

The trial court, as a part of the judgment, discharged the garnishee, and allowed him recovery of $150 as reasonable attorneys' fees. The bank, having appealed from said judgment, challenges the correctness of said judgment and proceedings in the court below in three respects, namely: (1) The failure of the judgment to award a foreclosure of the deed of trust lien; (2) the admission in evidence over the objection of appellant of a chattel mortgage given by Carmony to Wray upon certain property and fixtures in the building upon the property covered by said deed of trust; (3) the provision of the judgment discharging the garnishee Wray and awarding him recovery of $150 as attorneys' fees.

■ The question involved in the failure of the judgment to award a foreclosure of the deed of trust lien is whether or not appellees were estopped as a matter of law from showing that the property therein described was, at the time of the execution of said deed of trust, their business homestead. The record contains no conclusions of fact and law. No assignment of error challenges the sufficiency of the evidence to establish any particular issue of fact. Unless, therefore, it can be said that the issue of estoppel was shown by the undisputed evidence, no error is made to appear. All testimony, if any, tending to show there was no estoppel, must, of course, under the circumstances, be taken to be true.

There was evidence to the effect that Carmony was a married man, the head of a family, and a resident of the city of Dublin; that he owned said lot and had constructed a building thereon, designed and suitable for an ice cream factory; that at the date of the deed of trust in question he owned a one-half interest in an ice cream manufacturing and poultry business, Geo. H. Wray, a partner owning the other half. Both departments of the business were conducted on said lot 14, block 6, owned exclusively by Carmony, and in addition, there was used in the poultry department of the business certain lots across the street from said lot 14, block 6, which were owned in common by Wray & Carmony. Wray was manager of the business, and drew a salary of $190 per month. The firm paid Carmony $90 per month for the use of the property owned by him individually. Carmony worked at said ice cream and poultry business as his main business, but did not give his time to it exclusively. It was particularly a part of his duties to keep the machinery used in making ice cream in repair. The office for both branches of the business and in which the business was transacted was in the building on the lot in question. Carmony had no other office.

The original note of which the note in suit was a renewal was given to cover pre-existing debts which were unsecured. Appellant asked Carmony to make said notes and give said security. When so requested, Carmony told appellant's representative that he had nothing to offer for security. When it was suggested that he give a deed of trust upon the lot in question, Carmony told him that "any kind of a mortgage on it isn't worth a darn, as security it wouldn't be worth a darn." Upon this point Carmony further testified: "Well, he says, 'Would you mind giving it on this note?' And I says, 'No.' So went ahead and drew up the deed of trust then; from my remarks that were made there he, of course, knew that piece of property was homestead piece of property and all I had in the world in Dublin or anywhere else, and all the business I had at that time was located in that building." He further testified that he only read the description in the deed of trust, and that neither he nor his wife read the provision with reference to the property not being homestead. Carmony worked part of his time for a compress company and was paid a salary, but he testified

it was not his main business. Wray corroborated portions of Carmony's testimony, but, since we are not considering a question of the sufficiency of evidence, that is immaterial.

■ The evidence shows that, besides the lot in question and the lots across the street in which Wray owned a one-half interest, Carmony owned no property which was or ever had been "a place to exercise the calling or business" of Carmony as "the head of a family." It is immaterial, we think, that he owned other property which, if it had been used as such, might have constituted a business homestead. There was no estoppel in fact or law, unless as between the lot in question and the lots across the street from it, owned jointly by Wray and Carmony, and used in connection with a part of the business, there existed such an equivocalness of use as that either could be shown to be Carmony's business homestead by supplying proof of his intention to make it such, in addition to proof of the actual use made of same. The rule in that respect is believed to be the same as to business homesteads as applies to residence homesteads. That rule is, as we have recently had occasion to consider: "Where the facts respecting two places are such that the homestead character will attach to either to the exclusion of the other, according to the husband's intention, and the husband makes a declaration of that intention, causing another to act thereon, he will be estopped later to declare a contrary intention." Life Insurance Company of Virginia v. Weatherford (Tex. Civ. App.) 60 S.W.(2d) 883, 885. The authorities from which this statement of the rule was deduced are as follows: Parrish v. Hawes, 95 Tex. 185, 66 S. W. 209; Carstens v. Landrum (Tex. Com. App.) 17 S.W.(2d) 803; Purdy v. Grove (Tex. Civ. App.) 35 S.W.(2d) 1078; First Texas Joint Stock Land Bank v. Chapman (Tex. Civ. App.) 48 S.W.(2d) 651; Dallas Bldg. & Loan Ass'n v. Patterson (Tex. Civ. App.) 48 S.W.(2d) 657.

■ If the lot in question was exempt, the exemption did not extend to the lots across the street, although used in a part of the same business. Rock Island Plow Co. v. Alten, 102 Tex. 366, 116 S. W. 1144; Harrington v. Mayo, 61 Tex. Civ. App. 610, 130 S. W. 650; McDonald v. Campbell, 57 Tex. 614; Bowman v. Stark (Tex. Civ. App.) 185 S. W. 921; Hinzie v. Moody, 1 Tex. Civ. App. 26, 20 S. W. 769.

■ We believe the evidence shows, under the authorities cited, that Carmony could have given a valid mortgage on his interest in the lots across the street. If so, then the use of the different properties was not of that equivocal character from which an estoppel may arise. The evidence clearly shows that, with reference to the entire business of Wray & Carmony conducted on lot 14, block 6, that portion of the business conducted on the other lots was but auxiliary or in aid of the business premises proper. 22 Tex. Jur. p. 272, § 190; McDonald v. Campbell, supra; Bowman v. Stark, supra.

■ No effort was made to show that the lots across the street constituted the business homestead. Rather, it seems to have been the view of the appellee that to show the existence of any property that could, by the use of it as such, constitute a business homestead, was sufficient, without any proof of the actual use. There was no evidence of the character of improvements upon the lots across the street. Only from the pleadings can we know that there was any character of building upon same. There was no evidence as to the adaptability or necessity of said property in the conduct of the business other than that it was in fact used. One characteristic essential to the existence of a business homestead exemption is that the property must be adapted and reasonably necessary. 22 Tex. Jur. 269, § 188; Pfeiffer & Co. v. McNatt, 74 Tex. 640, 12 S. W. 821. We are doubtful if the issue of estoppel was raised by the evidence, but, whether so or not, we are firmly of the opinion that estoppel was not shown as a matter of law.

But, if it could be said that it was established by the uncontroverted evidence that Carmony was making such use of different properties each adapted and reasonably necessary in the conduct of one or more businesses as that by a declaration of his intention it could be shown that either was exempt, still we are of opinion that estoppel was not shown as a matter of law. Notwithstanding the recitation in the deed of trust, the evidence raised an issue of fact as to appellant's reliance upon such recital. The effect of Carmony's testimony is that appellant knew of the use of the property as business homestead and of his claim that the mortgage was void for that reason, and took same because it made the paper ostensibly secured look better to the bank examiners. The judgment for appellee implies a finding of this fact issue against the appellant.

■■ The other questions are not difficult of determination. The garnishee answered to the effect that he was not indebted to Carmony, and had no effects belonging to him except his interest in partnership property and funds. Such was a complete answer, and, if true, entitled him to a discharge. The burden was upon appellant to establish the contrary. "The funds and effects of a partnership are not liable to a garnishment for the debt of an individual member." 20 Tex. Jur. p. 720, § 19; Belva Oil Co. v. Lowe (Tex. Civ. App.) 27 S.W.(2d) 599. As further said by the authority first cited: "This principle is based upon the theory that the as-

sets of the partnership constitute a trust fund for the satisfaction of partnership creditors and until the settlement of the partnership business a member of the firm has no specific interest that may be appropriated to the satisfaction of his debt." Id.

■ The chattel mortgage was immaterial upon the issue of the liability of the garnishee, and hence there could be no error in its admission in evidence. The evidence wholly failed to establish the facts necessary to show that the garnishee was not entitled to a discharge upon his answer.

Being of opinion that no error is .shown, and that the judgment below should be affirmed, it is accordingly so ordered.

### On Rehearing.

Appellant's motion for rehearing exhibits such evidences of careful research and learning as justly to merit further discussion. In the original opinion, we expressed a doubt whether the issue of estoppel was raised by the evidence. Estoppel was a defense of a nature required to be pleaded. The question then is, Did the uncontroverted evidence show conclusively as a matter of law the existence of each and every necessary fact alleged to constitute estoppel? A careful reading of appellant's first supplemental petition, wherein are to be found the facts relied upon to constitute an estoppel, shows that it was not alleged that the lots across the street from the property in controversy were used, or ever had been used, as a business homestead, nor that same were adapted to, or necessary as, a place of business. On the contrary, appellant expressly averred (not in the alternative nor by separate count) that Carmony was not engaged in the ice cream and poultry business, as he claimed, which was the only business in connection with which, according to the undisputed evidence, said lots were used. The plea of estoppel expressly alleged: "That there was located on Lot 5, Blk. 2 a two-story store or brick business house situated on the west side of Patrick Street and within the business district of the city of Dublin, which building was better located and a more valuable site for business purposes and adapted by both location and construction to the uses of a business homestead than was the property in controversy in this case." Then, after alleging that since 1922 Carmony's business had been the ice manufacturing business, the cotton compress business, and dealing in futures and brokerage business, further alleged: "That no part of said business and occupations named was carried on by defendant on the premises in controversy, but that same was carried on in part in the building located on Lot 5, Blk. 2, and at other places in the city of Dublin, separate and apart from Lot 14, Blk. 6, involved in this cause." It is thus clearly to be seen that, in considering whether the undisputed evidence established each necessary fact relied upon to constitute an estoppel, the facts regarding the condition and use of said lots across the street from the property in controversy are wholly immaterial, as they are entirely without the scope of the pleadings. The conclusion of the trial court was that Carmony's business, in connection with which his business homestead rights attached, was neither of those alleged in the plea of estoppel, but another and different business, and, if there was an issue of fact upon this point it was determined against the appellant. It is necessarily true that those lots across the street could not have been used as the place of business in any of the businesses alleged by the appellee.

It is therefore our opinion that the pleadings did not tender any issue as to which the condition and use of the lots across the street were material.

The validity of our conclusion to the effect that the evidence raised an issue of fact regarding appellant's reliance upon the statement in the deed of trust is challenged on the ground that some of the evidence consisted of the conclusion or opinion of the witness, and should therefore be excluded from consideration under authority of Henry v. Phillips, 105 Tex. 466, 151 S. W. 533. This point is urged particularly to the testimony of Carmony quoted in the original opinion as follows: "From my remarks that were made there he, of course, knew that piece of property was homestead piece of property and all I had in the world in Dublin or anywhere else." It may be conceded that this testimony is the statement of a conclusion not to be considered under said authority. That concession, however, does not affect the validity of our holding. There was evidence from which the jury would have been warranted in reaching the same conclusion by way of inference from facts in the testimony. There was evidence that the property was valuable. There was evidence of its use as a place of business. There was no evidence of any fact from which it could be reasonably inferred that the property was worthless as security for any other reason than it was claimed to be homestead.

Upon the whole, therefore, it is our conclusion that the motion for rehearing should be overruled, which is accordingly so ordered.