**REALTY TRUST CO. et al. v. KOGER.**
No. 1191.

Court of Civil Appeals of Texas. Eastland.
March 16, 1934.

Rehearing Denied April 13, 1934.

Wilson, Randal & Kilpatrick, of Lubbock, for appellant.

Carl Rountree, of Lamesa, for appellee.

HICKMAN, Chief Justice.

This suit was instituted by appellee in three capacities, (1) individually, (2) as executor of the estate of Ethel Koger, deceased, and (3) as guardian of the estate of Robert Curtis Koger, a minor. The suit was upon several sets of vendor's lien notes, and for the foreclosure of the liens securing same upon a business lot in the city of Lemesa whereon was situated a filling station. Personal recovery was sought against J. S. Phinizy, who had assumed the payment of all the notes. Various persons and corporations, not necessary here to name, were made defendants under allegations that they were asserting liens upon, or interests in, the property, which were inferior to the liens of appellee. All parties defendant made default except the appellant, who, in its cross-action, declared upon a certificate of assessment issued by the city of Lemesa by virtue of an ordinance directing the paving of two streets adjacent to the property, and upon a contract lien executed by A. G. Loper, now deceased, and his wife, Mary Loper, who were the owners of the property at the time the paving was done. The trial was before the court without a jury, and resulted in a judgment in favor of appellee against J. S. Phinizy on two of the sets of notes declared upon, with a foreclosure of the vendor's lien upon the property. Appellant, on its cross-action, recovered personal judgment against Phinizy, with a foreclosure of its lien against the same property. Appellee's lien was declared to be superior to that of appellant, and it was accordingly ordered that the proceeds of the sale of the property be applied as follows: (1) To the satisfaction of the costs accruing under the order of sale; (2) to the satisfaction of the original court costs; (3) to the satisfaction of appellee's judgment; (4) to the satisfaction of appellant's judgment; and (5) the remainder, if any, to the defendant Phinizy.

The case is briefed under eight propositions, but the brief frankly states that but three questions are presented, viz.: (1) Appellee's petition was subject to a general demurrer; (2) the evidence was insufficient to support a finding that the property was the homestead of the Lopers at the time the lien evidenced by the certificate of assessment was attempted to be created; and (3) the evidence was insufficient to establish the ownership of the obligations sued on by appellee.

Was the petition subject to a general demurrer? Appellant insists that it was, while at the same time admitting that it may be somewhat startling to insist that a petition seeking recovery on a promissory note is bad as against a general demurrer. Appellee contends that the questions discussed under the assignments presenting this point were not raised in the court below and should, therefore, not be considered by this court on appeal. We cannot adopt this view. There is an order in the transcript overruling appellant's general demurrer, and under an assignment complaining that there was error in the ruling, appellant may assign as many reasons as present themselves in support of its contention. The petition is long and not easy to understand. It is probably true that had a special demurrer been filed separately to each ground of recovery, it would have been good as to the notes acquired by appellee from Temple Trust Company, but that question is not before us for decision. We have decided that, as to the notes which we shall designate as the Whitmire notes, the petition was good as against a general demurrer. If the allegations as to them were sufficient, there was no error in the ruling complained of.

The pleading with reference to the Whitmire notes was as follows:

"That on March 28th, 1925, A. B. Hefferman and J. S. Phinizy joined by their wives by their general warranty deed of said date conveyed the above described land and premises to E. L. Whitmire. That a part of said consideration was the execution and delivery by the said Whitmire of his four certain promissory vendor's lien notes of said date, Note No. 1 being for the principal sum of $500.00 due 60 days from date and Notes Nos. 2, 3, and 4 being each for the sum of $1181.32 payable to the order of A. B. Hefferman and J. S. Phinizy at Lamesa, Texas,

and due on or before March 28th, of the years 1927, 1928, and 1929, respectively, and bearing interest from date at the rate of 10% per annum, interest payable annually as it accrues, and providing for 10% additional upon the principal and interest then due, if placed in the hands of an attorney for collection. A Vendor's Lien being retained in said deed to secure the payment of said notes."

Follow then the allegations that Hefferman and Phinizy transferred the last three of said notes to G. T. Hall, note No. 1 theretofore having been paid and released. That thereafter Hall "transferred and assigned said notes to C. C. Koger, plaintiff herein, and he is the present owner and holder of same and entitled to receive their payment." In paragraph No. 21 of the petition, it is alleged that on February 2, 1929, A. G. Loper and wife conveyed the property to J. S. Phinizy, "that he assumed the liens sued on by plaintiff and is the present owner of said property." It would have been more accurate to have alleged that Phinizy assumed the indebtedness declared upon, rather than the liens, but we think the allegation sufficient, as against a general demurrer to charge that Phinizy assumed the indebtedness. It could have no other meaning. In paragraph No. 12, it is alleged:

"That on March 28th, 1929, by an extension agreement of said date the said Koger and Phinizy extended the time of payment of said notes so as to be as follows: It was agreed the balance due on said notes was the sum of $3,200.00 and agreed that it should be paid $100.00 on the 1st day of May, 1929, and a like sum the first of each month thereafter; that said indebtedness should bear interest from date at the rate of 10% per annum, and providing that a failure to pay any installment when due should at the option of the holder mature the whole obligations. That said $100.00 installments were paid to August, 1930, but have not been paid since said time, and plaintiff has elected to and has declared the balance due. Said extension agreement being recorded in Vol. 51, page 159. That said extension was also evidenced by a deed of trust of said date recorded in Vol. 20, at page 1 of the deed of trust records of Dawson County, Texas."

Paragraph No. 24 is as follows:

"That plaintiff's liens and rights are superior to any rights, lien or equities held or asserted by any of the defendants herein. That the original deeds, transfer, mechanics' liens and other instrument set out herein are in the hands of the defendants and notice is hereby given them to produce same on a trial hereof or secondary evidence will be introduced to prove their contents. That plaintiff's liens all are long past due and—paid. That he has placed same in the hands of the undersigned attorney and agreed to pay him the 10% stipulated therein as attorney's fees which is reasonable and customary."

■■ The allegations of paragraph No. 12, above copied, are not as specific as they might have been with reference to who executed the renewal notes and to whom same were payable, but, bearing in mind that Phinizy had assumed the indebtedness and Koger was the owner thereof, we think, by indulging in all reasonable intendments in support of the pleading, as we are required to do in passing upon general demurrers, and, considering the same in the light of the other pleading above noted, it may be said that the allegations are sufficient to charge that Phinizy executed the renewal notes to Koger. The allegation in paragraph 24 that the liens had been paid was patently the result of an error in typing. The allegation was meant to be that the notes were unpaid. The petition must be construed as a whole, and not so literally construed in one of its allegations as to render the whole proceeding idle. We overrule the assignment that appellee's petition was subject to a general demurrer.

■■ The second question presented relates to the sufficiency of the evidence to support the implied finding of the court that the property was the homestead of the Lopers at the time the lien evidenced by the certificate of assessment was attempted to be fixed by the city of Lamesa. That question is important for this reason: Appellant declared both upon the certificate of assessment and upon a contract lien with the Lopers. Under the express provisions of article 1090, R. S. 1925, such assessment lien, if valid, is superior to the vendor's lien. Nalle v. Eaves (Tex. Com. App.) 5 S.W.(2d) 500; National Loan & Inv. Co. v. L. W. Pelphrey & Co. (Tex. Civ. App.) 39 S.W.(2d) 926, 927. If the property at the time the ordinance was enacted was a homestead, no lien was created. As to the contract lien made with the Lopers, no superiority in its favor exists. Nalle v. Eaves, supra; Morrison v. State Trust Co. (Tex. Civ. App.) 274 S. W. 341. There are no findings of fact in the record, but, since the court, by its judgment, decreed the superiority of appellee's lien over that of appellant, we infer that it was appellant's contract lien

rather than its assessment lien which was foreclosed. In other words, the court must have based its judgment upon a finding that the property was Loper's homestead. It is not necessary to set out here all the evidence on the homestead question. Loper, who owned the property at the time the lien was attempted to be fixed, had been a farmer practically all his life. He owned a farm in Dawson county several miles from the town of Lamesa, which had been impressed with the homestead character. A short time before the happening of the events giving rise to the appellant's claim of lien, Loper purchased a small tract of rural land near the city of Lamesa, with the probable intention, at the time of purchase, to further improve same and live upon it. However, he did not move upon this smaller tract immediately upon leaving the farm, but instead purchased a residence in the city of Lamesa, designated in the record as the Barfoot place, and moved into it. He also purchased the property involved in this suit. While occupying this urban residence, Loper actually operated the filling station on the lot involved, and was so operating same at the time the lien was sought to be fixed thereon. It is the contention of appellant that Loper never abandoned his rural homestead. If that contention is correct, then he acquired no business homestead, for the same family is not entitled to both a rural and an urban homestead exemption. Swearingen v. Bassett, 65 Tex. 267; Williams v. Willis, 84 Tex. 398, 19 S. W. 683; 22 Tex. Jur. § 192, p. 276, and authorities there cited. But there is sufficient evidence in the record to support the holding that Loper abandoned his rural homestead when he purchased and moved into the urban property and purchased and became the operator of the filling station in controversy. The urban property was suitable for homestead purposes, and he certainly used the filling station as a place to conduct his business. His intention, under the facts, would be decisive of the question of abandonment. Purdy v. Grove (Tex. Civ. App.) 35 S.W.(2d) 1078. He died before the case was tried below, and we do not, therefore, have the benefit of his testimony, but his surviving widow testified that while she and her husband were occupying the urban property, they obtained a loan upon the farm, and at that time designated this urban property as their homestead. That fact, considered in connection with the other facts above stated, constituted sufficient evidence of Loper's intention to abandon his rural homestead. The conclusion is strengthened by the fact that he never returned to the farm. The assignments challenging the evidence in this particular are overruled.

■■■ The remaining question relates to the evidence as to the ownership of the obligations declared upon by appellee. According to the documentary evidence, they appeared to belong to the appellee, C. C. Koger, individually. But he offered in evidence a portion of the inventory and appraisement of the estate of Ethel Koger, deceased, in which the notes declared upon were listed as the property of said estate. He also offered in evidence a portion of the inventory and appraisement of the estate of Robert Curtis Koger, a minor, in which the same notes were listed as the property of the minor's estate. No explanation of these discrepancies was offered. The judgment was in favor of plaintiff, without designating in what capacity he recovered. Clearly this presents an irregularity, but we cannot see that appellant was injured thereby. Had some person other than appellee been the executor of the estate of Ethel Koger, or the guardian of the estate of Robert Curtis Koger, and such person had not been a party to the suit, a different situation would have been presented, for the evidence would not have been sufficient to disclose ownership in the plaintiff. But, since appellee, individually and in his capacity both as executor and as guardian, was before the court, and there is no suggestion in the testimony that any person not a party to the suit owns an interest in the notes, appellant was not injured by the fact that the respective rights of the plaintiff were not established and decreed. The assignments presenting this question are overruled.

Having considered and overruled all of appellant's assignments, it follows that the judgment of the trial court should be affirmed, and it is accordingly so ordered.