## FIRST COLEMAN NAT. BANK OF COLEMAN v. CHILDS et al.

### No. 1740.

Court of Civil Appeals of Texas. Eastland.
Jan. 21, 1938.

Rehearing Denied Feb. 18, 1938.

Critz & Woodward, of Coleman, for appellant.

Russell & Russell, of Baird, and Scarborough & Ely, of Abilene, for appellees.

LESLIE, Chief Justice.

The First Coleman National Bank, appellant, filed this suit against H. D. Childs

to recover on a promissory note and to foreclose the lien of a deed of trust executed October 30, 1930, by said Childs covering four different tracts of land, aggregating 570 acres. The defendant answered setting up a homestead claim in tract No. 1, embracing 200 acres. His wife, joined pro forma by her husband, intervened and independently asserted the homestead right, and alleged that she never signed the note or deed of trust and never knew of their execution until this suit for foreclosure. Plaintiff pleaded estoppel against the defendant and intervener to assert the homestead claim because Childs in the deed of trust declared the lots in Cross Plains to be his homestead at the time he procured the loan and gave the lien. The trial was before the court without a jury, and judgment was entered in favor of the plaintiff for the amount of the note and foreclosure of the lien on all except the 200-acre tract of land, as to which the lien was held to be void on the ground that it was homestead, etc. The bank appeals.

There are no findings of fact or conclusions of law in the transcript.

In substance, the facts out of which the litigation grows are as follows: H. D. Childs and his father acquired the 200 acres and other lands in Callahan county in 1885. They built a house thereon and resided on the land for several years. About 1888 H. D. Childs removed temporarily from the property, but returned to it in 1890 and bought his father's interest. He resided there until about January, 1920, when he moved with two minor daughters, 12 and 14 years of age, to Cross Plains, Tex., where he established a home on lots 15, 16, 17, and 18, block 62, Central addition to the town of Cross Plains, an incorporated municipality. He acquired lots 15 and 16 from R. M. Black and wife April 3, 1919, and lots 17 and 18 from T. D. Little and wife January 30, 1920. He filed these two deeds for record July 22, 1925. There was a residence on the lots, and the premises and improvements were and are adapted to homestead use.

February 26, 1925, said Childs and his present wife purport to have conveyed the four Cross Plains lots to J. A. Barr by warranty deed for a consideration of $928.20. The deed was in fact a mortgage to secure a local bank for a loan, with which Childs paid an indebtedness to Higginbotham Company. This instrument to Barr was not recorded in the deed records until January 8, 1931, subsequent to the date of the lien herein sought to be foreclosed.

Thereafter, on March 31, 1932, said Barr quitclaimed all of said lots to C. T. Childs, a son of H. D. Childs, for a recited consideration of $10. This quitclaim deed had not been filed for record at the time of the trial below. There is evidence that C. T. Childs and his partner furnished money to repay this indebtedness to the bank about the date of the quitclaim deed.

H. D. Childs was married three times. His first wife died in 1886. The second one died about 1910. He married the present wife in August, 1920, which was about six months after he moved from the 200-acre farm to the Cross Plains property. As early as November 20, 1912, said H. D. Childs, while a widower, executed to John H. Lucas, trustee, a deed of trust on different tracts of land, and he therein designated this 200 acres as his homestead. Without doubt he used and occupied the 200 acres as a homestead, continuously from about 1890, until the date he, as a widower, moved with his two minor daughters to the property in Cross Plains. On his marriage to the present wife in 1920 she went to reside with him and his daughters on the Cross Plains property.

On the trial of this case he testified that he originally moved to the property in Cross Plains for the purpose of educating said daughters, and that so soon as that was done it was his intention at all times to return to the 200-acre farm which had at all times and continuously been the homestead of his family. That the daughters grew up, married, and moved away, but that he was then unable to carry out his intentions to return to the farm because of the poor condition of his wife's health. That it was necessary for her to reside where the services of a physician were easily accessible. That her health had improved some, but not sufficiently at the time of the trial to justify his returning to the farm. That he hoped she would soon recover her health so he could carry out his intention to return to the old home. That the farm was in fact his homestead as herein contended, and was such at the date of the execution of the deed of trust.

He further testified that through the years while residing on the Cross Plains property he had constantly used the 200 acres for farming and agricultural purposes, raising such products thereon as

enabled him to support his family and otherwise make a living. That for about nine years following his removal from the farm he cultivated it with hired labor, paying a daily wage, and that thereafter, farming conditions becoming more acute, he share cropped the land, furnishing teams, implements, etc. In his absence from the farm he had constantly reserved the use of one room in the family residence thereon, and had kept some of his furniture therein. That occasionally he slept in that room at night, and at times had prepared his own meals at that place. He and his wife pleaded and testified that they did not know the deed of trust contained the designation of the Cross Plains property as a homestead. In effect, she corroborated his testimony on the material facts, respecting the condition of her health, homestead claims, continuous use, intention, etc. Other witnesses, including bankers and appellees' neighbors, substantiated his testimony.

The deed of trust (October 30, 1930) here involved contained the recitals designating as the homestead of the grantor said lots 15, 16, 17, and 18 in the town of Cross Plains, and disclaiming the homestead exemption in any other lands. For about sixteen years Childs and his family have occupied the Cross Plains property as a home. The Cross Plains property, as well as the farm are, with their improvements, adapted to homestead uses and were so adapted at the date this loan was obtained and the lien created.

On the date of the deed of trust (October 30, 1930) Childs made a credit statement to the bank "as a fair and accurate statement" of his financial condition, stating that he then owned one-half undivided interest in 570 acres (including said 200 acres) in the John Sayers survey, Callahan county, valued at $7,160, incumbrance $2,-000, and lots 15, 16, 17, and 18, in block 62, city of Cross Plains, valued at $2,000. This was subsequent to the warranty deed (mortgage) of said lots to Barr February 25, 1925, as well as prior to the recording of that instrument January 8, 1931. It is also prior to the quitclaim deed to said lots by Barr to C. T. Childs (son of H. D. Childs) of date March 31, 1932, and not recorded at the date of trial.

■ The loan and deed of trust came into existence under the above circumstances. It would be a liberal interpretation of the facts of the case in favor of the appellees to say that the tangible facts respecting the farm and the Cross Plains property at the date of the execution of the lien were such that the homestead character would attach to either to the exclusion of the other accordingly as the husband intended, but conceding such to be the case, then certain it is that the declaration by the husband on that occasion that the Cross Plains property constituted his homestead, plus the obtention of the loan on the faith thereof, conclusively estop him and his wife, under the circumstances of this case, to dispute the truth of such declaration. Carstens v. Landrum, Tex.Com. App., 17 S.W.2d 803; Purdy v. Grove, Tex. Civ.App., 35 S.W.2d 1078, writ ref.; Alexander v. Wilson, 124 Tex. 392, 77 S.W.2d 873; First Texas Joint Stock Land Bank v. Chapman, Tex.Civ.App., 48 S.W.2d 651; Life Ins. Co. of Virginia v. Weatherford, Tex.Civ.App., 60 S.W.2d 883; Blanks v. First Nat. Bank of Seymour, Tex.Civ.App., 44 S.W.2d 393, writ ref.; Farmers' Nat. Bank of Dublin v. Carmony, Tex.Civ.App., 62 S.W.2d 1115; Realty Trust Co. v. Koger, Tex.Civ.App., 70 S.W.2d 448; Ackerson v. Farm & Home Sav. & Loan Ass'n, Tex.Civ.App., 77 S.W.2d 559; McMullan v. San Antonio Joint Stock Land Bank, Tex. Civ.App., 78 S.W.2d 669; LeMaster v. Farrington, Tex.Civ.App., 103 S.W.2d 189; Wallingford v. Bowen, Tex.Civ.App., 104 S.W.2d 188.

From the standpoint of the mortgagee certainly there were no visible circumstances and facts to apprise it that the contents and recitals of the deed of trust did not state the facts when the loan was obtained. As to homestead rights in either property an ambiguous or equivocal situation was presented, and the husband's declarations, under the circumstances, conclusively estop him and his wife from now asserting the contrary.

■ From the opinion in Alexander v. Wilson, 124 Tex. 392, 77 S.W.2d 873, 874, we quote the following pertinent language that fits the material facts of this case:

"There can be no doubt that the declaration induced the loan, although there is no positive testimony to this effect. An inference that it did not would be unreasonable. The particular point to be considered is whether the mortgagee had the right to rely on the declaration in making the loan and taking the mortgage. He had such right, unless the visible circum-

stances existing at the time were of such import as to apprise him of the fact that the farm was the home of the mortgagors. That the circumstances were deficient in this respect is plain. The mortgagors resided in town. The use being made of the farm was not appurtenant to their residence there. Woolfolk v. Ricketts, 48 Tex. 28. Where homestead claimants reside in a city or town, the law does not regard a use of rural land as being a use for the purposes of a home. Const. Art. 16, § 51; Philleo v. Smalley, 23 Tex. [498], 502; Houston & G. N. Ry. Co. v. Winter, 44 Tex. 597.

"Even if known to the mortgagee in the instant case, the circumstance that the place in town did not belong to the mortgagors would not prevent an estoppel from rising against them. This circumstance, too, was consistent with an abandonment of the home on the farm. Woolfolk v. Rickets, 41 Tex. 358; Reece v. Renfro, 68 Tex. 192, 4 S.W. 545. So at last the homestead character of land on the farm depended solely on the intention of the mortgagors—particularly that of the husband. The rule is firmly established that, where the facts known to the mortgagee at the time, and those of which he is required to take notice, are consistent with the declared intention of the mortgagors, their declaration may estop them from asserting their homestead claim."

Under the circumstances of this case, the mortgagor, or Childs and his wife are estopped to assert the homestead claim to the 200 acres in question, regardless of the fact that the husband, after removing from the. farm to the city property, made certain uses of the farm for raising stock and agricultural products, both of which were consumed in the maintenance of his family while residing on the city property. In other words, the use of rural land by a city or town resident does not in itself support homestead claims therein. Alexander v. Wilson, supra; Roberts v. Cawthorn, 26 Tex.Civ.App. 477, 63 S.W. 332.

■ The question of abandonment of the rural homestead, if in the case, is of no controlling effect under the facts of this case. And in reaching the conclusions above stated we give full effect to the rule of law which empowers the husband, when acting without fraud on the wife, to select or abandon the homestead. Skiles v. Shropshire, 124 Tex. 462, 77 S.W.2d 872; Hudgins v. Thompson, 109 Tex. 433, 211

S.W. 586, 587; Hanes v. Hanes, Tex.Com. App., 239 S.W. 190; Wootton v. Jones, Tex.Civ.App., 286 S.W. 680; Broadland v. City Nat. Bank, Tex.Civ.App., 15 S.W. 2d 112; Schulz v. L. E. Whitham & Co., 119 Tex. 211, 27 S.W.2d 1093; Adams v. Walicek, 5 Cir., 9 F.2d 26; Sanders v. Life Ins. Co. of Virginia, Tex.Civ.App., 57 S. W.2d 327.

Concerning the legal ability of the head of the family to divest property of its homestead exemption by bona fide abandonment, Justice Greenwood, speaking for the Supreme Court in Hudgins v. Thompson, supra, said:

"The opinion in Smith v. Uzzell, 56 Tex. [315], 318, 319, distinctly defines the power of the husband to bind the wife, with respect to abandonment of the homestead, in stating:

" 'If, however, the husband, in fraud of the right of the wife and without her consent, should seek by an abandonment to withdraw the homestead from the pale of its exemption given for the benefit of the family, he could have no power to do so; but while he acts in good faith and not against the will of the wife, having alone in view the good of the family, of which by nature and by law, he is the recognized head, his power to abandon a homestead ought not to be questioned; and, in the absence of evidence to the contrary, it ought to be presumed, when a removal from a homestead is made, that it was made in good faith and with the consent of the wife.' "

■ Evidently good faith on the part of the head of the family in such case is the test. There is neither pleading nor testimony by either the husband or the wife in the instant case that he, in dedicating the Cross Plains property as the homestead, perpetrated any character of fraud on his wife. His acts and declarations in the premises bind the wife, as well as himself, and precludes a showing by either that the 200 acres was his homestead or one by intention. Such is the clear and positive holding by our Supreme Court in the recent case of Skiles v. Shropshire, supra.

Other points presented by the appeal become immaterial. The case has been fully developed, and the testimony being of a conclusive nature, it is the order of this court that the judgment of the trial court be affirmed in all respects, except wherein he refused to grant appellant a foreclosure

of its lien on the 200 acres. That part of the judgment is reversed, and judgment is here rendered in favor of appellant foreclosing the lien on said land. It is so ordered.