**Opinion issued April 9, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

**NO. 01-22-00793-CV**

———————————————

**FRANCISCO HERRERA, SR., Appellant**

**V.**

**SUNBELT RENTALS, INC., Appellee**

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-29152**

---

## MEMORANDUM OPINION

Francisco Herrera, Sr. signed a contract to sell his real property to a third party. During the sale process, he authorized the title company to pay Sunbelt Rentals Inc. $170,877.75 to remove a lien Sunbelt had placed on his real property following the entry of a default judgment against a "Francisco Herrera." Francisco

later filed suit against Sunbelt for declaratory judgment, unjust enrichment, restitution, and money had and received claiming Sunbelt improperly filed a lien on his real property to collect on a default judgment Sunbelt knew had not been entered against him. Francisco alleged he authorized the payment to Sunbelt under duress to save the sale and avoid breaching the sales contract.

Sunbelt filed a plea to the jurisdiction claiming that because Francisco had authorized the payment and Sunbelt had released the lien on his property in exchange, there was no live controversy between the parties and thus the trial lacked jurisdiction. The trial court agreed. It granted Sunbelt's plea holding Francisco's claims were moot and dismissing the case for lack of jurisdiction. Francisco argues the trial court erred because (1) contrary to the court's holding, there is a live controversy over whether he is entitled to recover the money he paid Sunbelt to remove Sunbelt's invalid lien on his property, and (2) at most, his payment to Sunbelt raises an affirmative defense to his claims, but does not deprive the court of jurisdiction or render any of his claims moot. In the alternative, Francisco argues the trial court's order contains two errors and, to the extent the trial court treated Sunbelt's plea to the jurisdiction as a motion for summary judgment or a plea in bar, it erred in doing so and in granting Sunbelt's plea on that basis.

We reverse the trial court's judgment and remand the case for further proceedings.

**Sunbelt's Default Judgment Against "Francisco Herrera"**

Francisco alleges that in 2017, his son, Francisco Herrera, Jr. ("Herrera, Jr."), rented equipment from Sunbelt. According to Francisco, Herrera, Jr. provided Sunbelt with a copy of his driver's license and "[p]ayments under the rental agreement were made by" Herrera, Jr. The rental agreement, dated August 18, 2017, was signed by "Francisco Herrera, Jr." and contained Herrera, Jr.'s driver's license number. According to Francisco, Sunbelt and its attorneys had "actual knowledge that the alleged agreement in question was with [his son] Francisco Herrera, Jr. through their possession" of the rental agreement.

The equipment was damaged during Hurricane Harvey.[1] Francisco alleges that after the equipment was damaged, Sunbelt retained a collection agency to collect payment from his son. On September 10, 2018, the collection agency "sent an email to Francisco Herrera, Jr" at frankherrerajr@yahoo.com, and the "subject line [of the email] identified Francisco Herrera, Jr. by the last four digits of his social security number." According to Francisco, Sunbelt "also made a negative credit report against [his son] Francisco Herrera, Jr."

---

[1] We take judicial notice of the fact that Hurricane Harvey made landfall along the Texas coast on August 25, 2017.

On December 26, 2018, Sunbelt filed suit against a "Francisco Herrera" for breach of contract and quantum meruit ("2018 Lawsuit").[2] Sunbelt attached several invoices to its petition reflecting the alleged amounts due for the equipment. According to Francisco, Sunbelt's suit arose "out of an alleged [equipment] agreement that was purportedly between Defendant Sunbelt and [his son] Francisco Herrera, Jr." Francisco alleged he never had a "contract or agreement" with Sunbelt. According to Francisco, the "account number" on the invoices attached to Sunbelt's petition matched his son's "full driver's license number, and the phone number on those documents is Francisco Herrera, Jr.'s phone number." Francisco alleges that neither he nor Herrera, Jr was "personally served" with the 2018 Lawsuit and "instead [Sunbelt] purportedly obtained substituted service."

On July 29, 2019, the trial court signed a default judgment in favor of Sunbelt against a "Francisco Herrera" in the 2018 Lawsuit. The trial court awarded Sunbelt $170,877.75 in damages, attorney's fees, and pre and post judgment interest.

Francisco alleges that Sunbelt's 2018 Lawsuit never "indicate[d] that it was against" him. According to Francisco,

> The last four digits of the social security number referenced in the military service search that [Sunbelt] submitted [to the trial court in the 2018 Lawsuit] with [Sunbelt's] motion for default judgment were 2624, but the last four digits of [his] social security number are 1390. Another affidavit submitted by [Sunbelt] in the [2018] Lawsuit referenced

---

[2] The style of Sunbelt's lawsuit was *Sunbelt Rentals, Inc, v. Francisco Herrera,* Cause No. 2018-90842, in the 281st Judicial District Court of Harris County, Texas.

4

communications with "Defendant" which were communications with Francisco Herrera, Jr.

Francisco alleges that even though Sunbelt knew "the last four digits of Francisco Herrera, Jr.'s social security number," his "driver's license number," and "his full date of birth," Sunbelt secured an abstract of judgment which falsely and in violation of Section 52.003 of the Texas Property Code[3] stated that the judgment debtor's social security number, driver's license number, and date of birth were all "UNKNOWN."

Sunbelt filed the abstract of judgment in the Harris County real property records in September 2019, placing a judgment lien on Francisco's real property. That same month, the trial court issued Sunbelt a writ of execution, allowing Sunbelt to force the sale of Francisco's property to satisfy the judgment. Sunbelt sent the writ of execution to the Harris County Constable's Office, but the Constable's Office was unable to serve "Francisco Herrera" with the writ of execution.

---

[3] An abstract of judgment converts a money judgment into a judicial lien that may later be executed against real property to satisfy the judgment. TEX. PROP. CODE § 52.001 (noting properly recorded and indexed abstract of judgment creates lien on judgment debtor's non-exempt real property in county); *Bowman v. The Bank of New York Mellon Tr. Co., N.A.*, No. 05-13-01684-CV, 2016 WL 258765, at *3 (Tex. App.—Dallas Jan. 21, 2016, pet. denied) (mem. op.) ("An abstract of judgment . . . perfects a lien on property that is actually owned by the judgment debtor."). Section 52.003 of the Property Code requires an abstract of judgment to contain, among other things, "the birthdate of the defendant, if available to the clerk or justice," "the last three numbers of the driver's license of the defendant, if available," and "the last three numbers of the social security number of the defendant, if available." TEX. PROP. CODE § 52.003(a)(2)–(4).

5

In October 2019, Sunbelt asked the Constable's Office to place the "non exempt real property on county auction sale." The Constable's Office spoke to the "defendant" who informed the Constable's Office that he was Herrera, Jr. and that the property at issue was owned by his father, Francisco. After the Constable's Office reported this information to Sunbelt's attorney, the attorney instructed the Constable's Office to place the writ of execution on hold until further notice. The record reflects that Sunbelt never forced the sale of Francisco's property to satisfy the default judgment.

Francisco alleges that in October 2019, he sent a "cease and desist" letter to Sunbelt advising Sunbelt that its default judgment was against Herrera, Jr., arising from a dispute between Sunbelt and his son, Herrera, Jr. Although Francisco demanded that Sunbelt "cease its collection efforts" against him, Sunbelt "failed to release the abstract of judgment" on his property. Francisco alleges that Sunbelt "either knowingly sought to obtain and collect on a judgment that was on its face unclear as to the judgment debtor and not actually against [Francisco] or acted with negligence in reckless disregard of facts which would have led a person exercising ordinary care to realize that [Sunbelt's] actions would likely harm" Francisco.

In 2021, Francisco signed a contract to sell his property for $899,000. The contract required Francisco to furnish the buyer with a title insurance policy and convey at closing clear title to the property. The abstract of judgment created a cloud

6

on Francisco's title that had to be resolved prior to closing. According to Francisco, Sunbelt misrepresented to the title company that Francisco was the judgment debtor. Francisco alleges that he "again protested and disputed [Sunbelt's] assertions regarding the debt," but on August 16, 2021, he was "forced and coerced to permit $170,877.75 to be taken out of the purchase price on the sale [of his property] to resolve [Sunbelt's] abstract of judgment." Francisco alleges that had he not authorized the payment to Sunbelt, he "would have lost an approximately $899,000 sale of the property and would have been in breach of the sales contract."

After receiving payment, Sunbelt filed a "Release of Abstract of Judgment" in August 2021. The release states in part,

> WHEREAS, the judgment has been paid in full, including interest and costs to Sunbelt Rentals, Inc., the legal owner and holder of said indebtedness;

> NOW, THEREFORE, in consideration of the payment of the judgment, interest, and costs, the undersigned does hereby release and discharge the said Francisco Herrera, his heirs and assigns, from any and all liability of every kind and nature by reason of said judgment and does hereby release and discharge any and all liens that may exist by virtue of the recording of an abstract of said judgment.

There is no settlement agreement in the record or other indication that Francisco reviewed the release before Sunbelt filed it in the property records. In his affidavit filed in this suit, Francisco states that he did not "directly communicate with Sunbelt Rentals, lnc. or any attorney for Sunbelt Rentals regarding this matter."

7

## Francisco's Lawsuit Against Sunbelt

In May 2022, Francisco filed suit against Sunbelt asserting claims for declaratory judgment and "money had and received/unjust enrichment/restitution."[4] In his second amended petition, the live petition, Francisco requests the following declaratory relief:

> Plaintiff incorporates the pertinent facts set forth herein. Plaintiff seeks to have this Court declare pursuant to [Texas Civil Practice and Remedies Code] § 37[5] that the judgment in the [2018] Lawsuit is not against him and invalidating any abstracts of judgment or other similar instruments filed by [Sunbelt] against [Francisco] or against "Francisco Herrera" in connection with the [2018] Lawsuit. . . . As outlined above, the [2108] Lawsuit contains information purportedly associated with the defendant in that lawsuit which does not identify [Francisco] but instead belongs to two other persons. [Francisco] also seeks such supplemental relief under [Texas Civil Practice and Remedies Code] § 37.011 as may be necessary or appropriate to invalidating the judgment and abstract of judgment as to [Francisco] and unwinding any execution efforts made against [Francisco] and restraining and enjoining [Sunbelt] from making any further wrongful execution

---

[4]   *Miga v. Jensen*, 299 S.W.3d 98, 105 (Tex. 2009) ("Restitution is rooted in principles of unjust enrichment."); *Ferrara v. Nutt*, 555 S.W.3d 227, 244 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (stating cause of action for money had and received is equitable in nature and "belongs conceptually to the doctrine of unjust enrichment") (quoting *Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied) (citation omitted)).

[5]   Texas Civil Practice and Remedies Code § 37 is the Declaratory Judgment Act.

efforts, and [Francisco's] costs including reasonable and necessary attorney's fees.

With respect to Francisco's claims for money had and received, unjust enrichment, and restitution, Francisco states:

> In addition and in the alternative, [Francisco] seeks recovery of the $170,877.75 that [Sunbelt] received in connection with the abstract of judgment. Based on the pertinent facts set forth above, those funds belong in equity and good conscience to [Francisco]. See, e.g., RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT §§ 6, 7, 8, 14, 18, 35, & 44. [Sunbelt] procured payment through coercion, duress, and deception, and with unclean hands. [Francisco] seeks . . . actual damages including but not limited to restitution/unjust enrichment damages and exemplary damages.

Sunbelt filed a plea to the jurisdiction seeking dismissal of Francisco's claims for lack of subject matter jurisdiction, claiming there was no live controversy between the parties and thus Francisco's claims were moot. Sunbelt argued that Francisco was the "Francisco Herrera" named in the 2018 Lawsuit, and that he filed his lawsuit to "circumvent statutory appeals, which were not timely filed" in that action. According to Sunbelt, Francisco's payment of the default judgment in August 2021 coupled with Sunbelt's "subsequent release rendered this case moot because all parties have been released of their obligations to one another" and there is "no justiciable controversy that the court has the power to remedy." Sunbelt attached five documents to its plea: (1) the default judgment from the 2018 Lawsuit, (2) the general warranty deed for Francisco's property reflecting the property was owned by "Francisco Herrera," (3) Sunbelt's "Abstract of Judgment," (4) Sunbelt's

9

"Release of Abstract of Judgment," and (5) the final settlement statement reflecting Sunbelt's release of the judgment lien on Francisco's property and the title company's disbursement of a portion of the sales price to Sunbelt's counsel.[6]

Francisco filed a response to Sunbelt's plea to the jurisdiction arguing Sunbelt's plea should be denied because "voluntary payment defenses" are affirmative defenses, not jurisdictional bars. Francisco argued that Sunbelt's issues are summary judgment matters, and even had Sunbelt filed a summary judgment motion, Sunbelt still would not prevail[7] because a "central issue, if not the most important issue, in this case, is which 'Francisco Herrera' is referenced at which points in and related to the [2018] Lawsuit." Francisco argued Sunbelt had not "offered any evidence, much less evidence conclusive as a matter of law, that the [2018] Lawsuit was against Plaintiff Francisco Herrera, Sr. rather than his son Francisco Herrera, Jr." He argued there is a fact issue as to whether he is a "stranger" to the default judgment, "and as such he is permitted . . . to contest its enforcement against him through a declaratory judgment." Francisco attached nine documents to

---

[6] Four days after Sunbelt filed its plea to the jurisdiction, Francisco filed his second amended petition, which does not vary substantially from his first amended petition.

[7] Francisco addressed the merits of Sunbelt's voluntary payment argument, which he contends is an affirmative defense and does not render the controversy between him and Sunbelt moot. According to Francisco, the voluntary payment rule does not bar his claim for recoupment of his payment to Sunbelt under equitable principles because Sunbelt secured the payment through coercion, duress, and misrepresentation.

his response: (1) his affidavit, (2) Herrera, Jr.'s affidavit, (3) Sunbelt's request for admissions, (4) Sunbelt's petition in the 2018 Lawsuit with attached invoices, (5) affidavits attached to Sunbelt's motion for default judgment filed in the 2018 Lawsuit, (6) the return for the writ of execution issued in connection with the abstract of judgment, (7) the sales contract for the sale of Francisco's property in August 2021, (8) "excerpts from the title commitment for the real estate sale that is the subject of the contract," and (9) an email chain between counsel for Francisco and Sunbelt's counsel in which Sunbelt's counsel states she disagrees with Francisco's assertion that Sunbelt's plea to the jurisdiction is a motion for summary judgment.

In his affidavit, Herrera, Jr. states he is Francisco's son, he does not always use "Jr.," and sometimes he refers to himself as "Francisco Herrera." He states that he "made payments to [Sunbelt] in 2017 from an account ending in 1194 that is in my name as 'Francisco Herrera.'" Herrera, Jr. states:

> In 2017, I rented some equipment from [Sunbelt.] My father [Francisco] was not part of the rental transaction and I did not rent equipment on my father's behalf or as my father's agent or employee. In the process of obtaining the rental, [Sunbelt] made a copy of my driver's license and got my phone number. I also signed a reservation for the equipment as "Francisco Herrera, Jr." As part of the rental, I purchased additional insurance on the equipment. The equipment was damaged during Hurricane Harvey."

> In 2018, [Sunbelt] made efforts to collect the alleged debt from me. I retained attorney Jose Aldape who communicated on my behalf with [Sunbelt] in 2018, including with its attorney Monica Orlando.

11

Herrera, Jr. states it "was and is his understanding" that the 2018 Lawsuit "was against me, not my father."

In his affidavit, Francisco states he did not rent any equipment from Sunbelt or authorize Herrera, Jr. to rent the property on his behalf. He believes the 2018 Lawsuit was against Herrera, Jr., not him. He further states:

> In 2021, I was selling [the property against which Sunbelt had perfected its judgment lien] for approximately $899,000.00. I was told that to sell the property and not lose the $899,000.00 sale, I needed to allow $170,877.75 to be deducted from the sales price. I did not directly communicate with [Sunbelt or its attorneys] regarding the matter. I allowed the amount to be deducted out of the sales price only because it was my understanding that I would have breached the [purchase] contract with the buyer of the property had I refused to allow the $170,877.75 to be deducted.

The trial court conducted a hearing and heard arguments from counsel on Sunbelt's plea to the jurisdiction. At the end of the hearing, the trial court took the plea under advisement. Six weeks later, the court issued an order granting Sunbelt's plea to the jurisdiction, which states:

> After considering Defendant's motion and Plaintiff[']s response, if any, and after hearing arguments of counsel, this Court is of the opinion that the causes of action pled by Plaintiff against Defendant are moot and that Plaintiff[']s entire case should be dismissed for lack of subject matter jurisdiction as a matter of law.

This appeal followed.

## Plea to the Jurisdiction

"[S]ubject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. V. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). The trial court's subject matter jurisdiction may be challenged through a plea to the jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004); *Blue*, 34 S.W.3d at 554 ("A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit."). Whether a court has subject matter jurisdiction is a question of law, and we thus review a ruling on a plea to the jurisdiction *de novo*. *Miranda*, 133 S.W.3d at 228.

The plaintiff has the burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction. *Id.* at 226. We begin with the allegations in the plaintiff's live pleadings, which we construe liberally in favor of jurisdiction and, unless challenged with evidence, take as true. *See id.* We consider any evidence introduced by the plaintiff relevant to the jurisdictional inquiry. *See City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010); *Blue*, 34 S.W.3d at 555 ("[A] court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.").

If the plea challenges the existence of jurisdictional facts, we apply the procedure and standard of review applicable to summary judgments. *See Miranda*, 133 S.W.3d at 228. We consider the relevant jurisdictional evidence submitted by the parties, taking as true all evidence favorable to the plaintiff, indulging all reasonable inferences and resolving all doubts in the plaintiff's favor. *Id.* If the defendant asserts, and supports with evidence, that the trial court lacks subject matter jurisdiction, the burden shifts to the plaintiff to show there is a disputed material fact concerning jurisdiction. *Id.* If the jurisdictional evidence, considered in the light most favorable to the plaintiff, raises at least a question of fact as to the jurisdictional issue, the plea must be denied, leaving the matter to be resolved by the factfinder. *Id.* at 227–28.

## Subject Matter Jurisdiction

Sunbelt argued the trial court lacked subject matter jurisdiction over Francisco's claims because Francisco voluntarily paid the principal amount of the default judgment and in exchange, Sunbelt released and discharged the abstract of judgment as well as "Herrera" from any liability arising from the judgment. Consequently, Sunbelt argued, there was no longer a live controversy between the parties and Francisco's claims were moot. Sunbelt also argued that Francisco's claims constitute an improper collateral attack on the default judgment. And Sunbelt claimed the trial court lacked jurisdiction over Francisco's declaratory judgment

claim because a party cannot use the Declaratory Judgment Act to interpret a prior judgment.

Francisco argues that while the voluntary payment rule may moot claims pending on appeal, "at the trial court level, voluntary payment is not a jurisdictional issue, but [rather] a type/class/species of the affirmative defense of estoppel." Francisco further argues that the defense of voluntary payment is inapplicable because Sunbelt "procured [the] payment through coercion, duress, and deception, and with unclean hands," thus rendering his payment involuntary. And in any event, there is at least a fact issue precluding a ruling on this issue, which he reiterates, is not a jurisdictional bar.

**Mootness**

Mootness is a threshold issue that implicates a court's subject matter jurisdiction. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018); *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012). "A case becomes moot when there ceases to be a justiciable controversy between the parties or when the parties cease to have 'a legally cognizable interest in the outcome.'" *Harper*, 562 S.W.3d at 6 (quoting *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001)). In other words, "a case is moot when the court's action on the merits cannot affect the parties' rights or interests." *Heckman*, 369 S.W.3d at 162; *see also Abbott v. Mexican Am. Legislative Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 689 (Tex.

15

2022) (recognizing "mootness is difficult to establish" because party asserting it must prove it is "impossible for a court to grant any effectual relief whatever to the prevailing party") (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016)). If a case is or becomes moot, a court must dismiss the case for lack of jurisdiction. *Heckman*, 369 S.W.3d at 162.

## A.    Voluntary Payment Rule

The voluntary payment rule is a common law principle. Under the common law rule, "money voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability." *Miga v. Jensen*, 299 S.W.3d 98, 103 (Tex. 2009) ("*Miga II*") (quoting *Pennell v. United Ins. Co.*, 150 Tex. 541, 243 S.W.2d 572, 576 (1951)).

In *Highland Church of Christ v. Powell*, the Supreme Court "acknowledged the rule that a judgment debtor's voluntary payment and satisfaction of an adverse judgment moots the controversy, waives the debtor's right to appeal, and requires dismissal of the case." *Miga v. Jensen*, 96 S.W.3d 207, 211 (Tex. 2002) ("*Miga I*") (citing *Highland Church of Christ v. Powell*, 640 S.W.2d 235, 236 (Tex 1982)). But the court emphasized that "the rule's basis is 'to prevent a party who has freely decided to pay a judgment from changing his mind and seeking the court's aid in recovering the payment,'" noting that a "'party should not be allowed to mislead his

opponent into believing that the controversy is over and then contest the payment and seek recovery.'" *Miga I*, 96 S.W.3d at 211 (quoting *Highland Church of Christ*, 640 S.W.2d at 236).

The voluntary payment rule "is not, and never has been, simply that any payment" toward satisfaction of a judgment, even voluntary payments, "moots the controversy and waives the right to appeal that judgment." *Id*. Voluntary payment of a judgment, for example, "will not moot an appeal of that judgment if the judgment debtor clearly expresses an intent that he intends to exercise his right of appeal and appellate relief is not futile." *Id.* at 212.

The voluntary payment rule is rarely applicable,[8] and in circumstances analogous to the present case, courts generally have treated the rule as a defense. *Miga II*, 299 S.W.3d at 103 (holding voluntary payment rule is "defense to a restitution claim"); s*ee also generally Lowenberg v. City of Dall.*, 261 S.W.3d 54, 59 (Tex. 2008) (holding voluntary payment rule barred claims for recovery of registration fees paid to city under ordinance); *Dall. Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 883 (Tex. 2005) (holding voluntary payment rule barred claims by community college students for repayment of fees imposed by community college district).

---

[8]     *Miga II*, 299 S.W.3d at 104 (noting that in forty years, Texas Supreme Court has applied rule affirmatively in only two cases).

To determine whether Francisco's payment of $170,877.75 to remove the lien on his property was a voluntary payment that mooted his claims against Sunbelt, we consider two opinions from the Texas Supreme Court, which we find instructive: *Dallas County Community College District v. Bolton*, 185 S.W.3d 868 (Tex. 2005) and *Lowenberg v. City of Dallas*, 261 S.W.3d 54 (Tex. 2008). In both cases, the Supreme Court considered the defense of voluntary payment on the merits.

In *Bolton*, a college student brought a class action against the Dallas County Community College District seeking a declaration that the technology and student services fees students paid were illegal. *Id.* at 870. The District filed a motion for partial summary judgment arguing there was no evidence of duress and seeking a ruling that the students' claims were "barred by the defense of the voluntary payment rule as a matter of law." *Id.* at 871. The students cross-moved for summary judgment on the grounds they suffered duress as a matter of law because the fees were mandatory and thus, they had rebutted the "voluntary payment defense." *Id.* at 871–72. The trial court granted summary judgment in favor of the students, declaring the fees to be illegal and ordering the District to refund the fees to the students. The court also held, as a matter of law, that the students had paid the fees under duress. *Id.* at 871. The court of appeals affirmed the trial court's judgment.

On petition for review, the Supreme Court held that one of the fees was legal, and that even if the second fee were illegal, the students' claims for reimbursement

were barred by the voluntary payment rule because the students had not paid the fees "under duress." *Id.* at 876, 883 (concluding students "did not establish duress as a matter of law, and that the District established that the student services fee payments were voluntary payments as a matter of law"). The court held the students were not "entitled to a refund of the technology fees or a refund of the increase in the student services fee," reversed the court of appeals' judgment, and rendered judgment that the students take nothing. *Id.* at 883. At no point did the court conclude that the students' voluntary payment of the fees rendered the case moot, subjecting the claims to dismissal for lack of jurisdiction. *See Garcia v. City of Willis*, 593 S.W.3d 201, 206 (Tex. 2019) (stating court is "duty-bound" to determine whether subject matter jurisdiction exists and stating, "The importance of this inquiry—even when not urged by the parties—cannot be overstated."). To the contrary, the court exercised jurisdiction over the case and decided the case on the merits, indicating that at least under the circumstances in *Bolton*, the court considered the District's voluntary payment argument to be a defense to recoupment, and not a jurisdictional bar rendering the case moot. 185 S.W.3d at 871 ("The District had the burden of conclusively establishing its *defense* of voluntary payment.") (emphasis added).

In *Lowenberg*, the City of Dallas passed an ordinance requiring a certificate of registration "to own, operate, or control a commercial building within the city." 261 S.W.3d at 56. To obtain an annual certificate, a person had to apply and pay a

fire registration fee, intended to generate funds for the city's fire protection services. *Id.* Failure to pay the fee subjected the applicant to a criminal fine of up to $2,000. *Id.* The ordinance, which went into effect on January 1, 1995, was so unpopular the City repealed it in October 1995. In 1997, the plaintiffs filed a class action lawsuit against the City challenging the ordinance as an unlawful occupation tax and seeking a refund of their paid registration fees. *See id.* at 57. The trial court granted summary judgment in the class members' favor "declaring that the fee was an illegal occupation tax, that persons who paid the fee on or after July 28, 1995 (some 19,000 in all) were entitled to a refund, that claims for payments before that date were barred by limitations, and that the refund totaled $1,009,751.25." *Id.* The court rendered judgment awarding the class members refunds, prejudgment interest, and attorney fees. *Id.*

On petition for review, the Texas Supreme Court held that the voluntary payment rule did not bar recovery because the class members had paid the registration fees under duress. *Id.* at 59. More relevant to the issues here, the court rejected the City's argument that the class members' declaratory judgment claim had been mooted by the payment of their registration fees and the subsequent repeal of the ordinance, stating "the City cannot extract millions in unlawful fees and fines, decide the whole thing was a mistake [and repeal the ordinance], keep the money,

20

and insist the whole matter is moot. For those who paid, the controversy remains real." *Id.*

In the present case, Sunbelt obtained the default judgment against a "Francisco Herrera," which it later used to secure and file an abstract of judgment on Francisco's real property. After authorizing the title company to pay Sunbelt to remove the abstract of judgment from his property, Francisco sued Sunbelt for declaratory judgment, money had and received, unjust enrichment, and restitution. Francisco alleges that even though Sunbelt knew he was not the defendant in the 2018 Lawsuit and thus that the default judgment could not be enforced against him, Sunbelt wrongfully used the abstract of judgment to extract payment of the default judgment from him. Francisco requests that the trial court declare he was not the defendant in the 2018 Lawsuit against whom the default judgment was rendered and to declare invalid the abstract of judgment. He also seeks recoupment of the money he paid Sunbelt to remove the allegedly invalid abstract of judgment and lien on his property.

Based on the facts presented, we conclude Francisco's payment to Sunbelt to remove the abstract of judgment, which he alleges he paid under duress, does not moot Francisco's claims or deprive the trial court of jurisdiction. At most, Sunbelt's argument that Francisco paid the default judgment voluntarily raises a voluntary payment defense to Francisco's claims, just as the voluntary payment arguments did

21

in *Bolton* and *Lowenberg*.[9]   The trial court thus erred in dismissing Francisco's claims for lack of subject matter jurisdiction.

## B.      Release of the Abstract of Judgment

In addition to the voluntary payment defense, Sunbelt argues its release of the abstract of judgment and default judgment rendered Francisco's claims moot because "all parties have been released of their obligations to one another."   We disagree.

Francisco's payment to Sunbelt and the resulting release of the abstract of judgment and default judgment do not render his claims against Sunbelt moot.  The controversy in this case is not over whether Francisco has the right to challenge the merits of the underlying claims in the 2018 Lawsuit, which resulted in the default judgment.   The controversy between the parties is over whether the filing of the abstract of judgment on Francisco's property by Sunbelt to secure payment of the default judgment was proper given that according to Francisco, he was not the defendant in the 2018 Lawsuit, Sunbelt knew he was not the defendant, and Francisco paid the default judgment under duress.

Francisco's claims against Sunbelt are thus not moot.  There is a justiciable controversy between Francisco and Sunbelt as to (1) whether Francisco was the

---

[9]      Sunbelt did not move for summary judgment on its voluntary payment defense, and we express no opinion as to the merits of such defense.

22

defendant in the 2018 Lawsuit, (2) whether the abstract of judgment was filed properly against Francisco's property, and (3) whether Francisco is entitled to recoupment of the $170,877.75 he paid to Sunbelt in exchange for Sunbelt's removal of the abstract of judgment.

We further note that release is an affirmative defense to a claim, not a jurisdictional bar. TEX. R. CIV. P. 94. The trial court did not reach the merits of this affirmative defense, but instead dismissed the suit based solely on jurisdictional grounds. The trial court erred in doing so.

## Collateral Attack

Sunbelt argues that because the default judgment is not void on its face, Francisco's suit is an impermissible collateral attack and thus the trial court did not err in granting its plea to the jurisdiction.[10] Francisco, who does not argue on appeal the default judgment is void, argues that a dispute over the validity of a prior judgment is not necessarily a collateral attack depriving a court of jurisdiction.

A judgment may be attacked directly or collaterally. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012). "A direct attack—such as an appeal, a

---

[10] While Sunbelt did not raise this argument in its plea to the jurisdiction, during the hearing on Sunbelt's plea, Sunbelt's counsel argued:

> Notwithstanding that, Your Honor, if Counsel argues that they're here trying to, quote, unquote, collaterally attack the judgment, claiming that somehow or another the judgment is void, he would have had to bring some kind of claim for undue process -- undue process violation. He hasn't done that, Judge.

23

motion for new trial, or a bill of review—attempts to correct, amend, modify or vacate a judgment and must be brought within a definite time period after the judgment's rendition." *Id.* Unlike a direct attack, a collateral attack does not seek to change the judgment. *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). Rather, a "collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Id.*; *Zarate v. Sun Operating Ltd., Inc.*, 40 S.W.3d 617, 620 (Tex. App.—San Antonio 2001, pet. denied) ("A collateral attack is any proceeding to avoid the effect of a judgment which does not meet all the requirements of a valid direct attack.").

Unlike a voidable judgment, a void judgment can be collaterally attacked at any time. *PNS*, 379 S.W.3d at 272; *see also Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985). A judgment is void only when it is apparent the court rendering it lacked (1) jurisdiction over the parties or property, (2) jurisdiction over the subject matter, (3) jurisdiction to enter the judgment, or (4) the capacity to act as a court. *Placke*, 698 S.W.2d at 363. Any errors that render a judgment voidable, instead of void, must be corrected through a direct attack. *Id.*; *PNS Stores*, 379 S.W.3d at 271, 272 n.7. Once the time to bring a direct attack has expired, a litigant may only attack a judgment collaterally. *PNS*, 379 S.W.3d at 272.

24

Although a judgment may be attacked directly or collaterally, not every action implicating a prior judgment is an attack on that judgment. *See Rodriquez v. Tex. Farmers Ins. Co.*, 903 S.W.2d 499, 511 (Tex. App.—Amarillo 1995, writ denied) (holding that insurer's suit for declaratory judgment that it had no duty to defend or indemnify its insureds in suit that resulted in default judgment against insureds was not collateral attack on default judgment); *Cavers v. Sioux Oil & Ref. Co.*, 23 S.W.2d 421, 430 (Tex. App.—El Paso 1929) (holding litigant's assertion it was not bound by judgment because it was not party to judgment was not collateral attack), *rev'd on other grounds* 39 S.W.2d 862 (Tex. Comm'n App. 1931); *see also Haworth v. Haworth*, 795 S.W.2d 296, 298 (Tex. App.—Houston [14th Dist.] 1990, no writ) (stating litigant does not collaterally attack judgment by asking court to interpret judgment's vague or ambiguous provisions) (citing *State v. Reagan Cnty. Purchasing Co.*, 186 S.W.2d 128, 136 (Tex. Civ. App.—El Paso 1944, writ ref'd w.m.)).

Francisco is not challenging the validity of the default judgment rendered against "Francisco Herrera" in the 2018 Lawsuit nor is he attempting to challenge whether Sunbelt was entitled to a default judgment arising from its damaged rental equipment. In his petition, Francisco alleges he was not the defendant in the 2018 Lawsuit or the party against whom the default judgment was rendered. He is thus requesting a declaration that he is not the "Francisco Herrera" named in the 2018

25

Lawsuit against whom the default judgment was rendered, and he is challenging the validity of Sunbelt's filing of the abstract of judgment on his property as a means of collecting on the default judgment to which Francisco claims he was a stranger. Francisco is not attempting to avoid the binding force of the default judgment or to "obtain some specific relief which the judgment currently stands as a bar against." *See Browning*, 165 S.W.3d at 346. Francisco's suit thus does not constitute an attack on the default judgment. *See id.*; *see also Cavers*, 23 S.W.2d at 430 ("The appellants here are not attacking the validity of the judgment in Stephens County, as between the parties to that judgment, nor as to the issues presented by the pleadings in that case. Appellants' position simply is that they are not bound by that judgment for the reasons we have heretofore stated, and that position is not a collateral attack which they are forbidden to make.").

Even if Francisco's suit were an attack on the default judgment, a person who is not a party to a judgment may still attack the judgment if his interests are affected by the judgment. *See Edgington v. Maddison*, 870 S.W.2d 187, 190 (Tex. App.— Houston [14th Dist.] 1994, no writ) (holding that even if plaintiff had collaterally attacked prior judgment, "collateral attack would be proper because [plaintiff] was an interested third party" to judgment and stating "the effect of the collateral attack is not to vacate the judgment as between the parties, but to prevent the enforcement of the judgment from interfering with the rights of third parties") (citing *Nat'l Loan*

26

*& Invest. Co. v. L.W. Pelphrey & Co.*, 39 S.W.2d 926, 929 (Tex. Civ. App.—Eastland 1931, no writ)). If, as Francisco alleges, he was not a party to the 2018 Lawsuit, then the default judgment is not binding on Francisco or enforceable against him. *See Charvis v. Charvis*, 529 S.W.2d 814, 815 (Tex. App.—Tyler 1975, no writ) (stating "a valid judgment which is immune to collateral attacks by parties and their privies is not binding upon strangers") (citing *Kirby Lumber Corp. v. S. Lumber Co.*, 196 S.W.2d 387, 388–89 (Tex. 1946)); *Tex. Soap Mfg. Corp. v. McQueary*, 172 S.W.2d 177, 180 (Tex. App.—El Paso 1943, no writ) ("A judgment being wholly ineffective as against one not a party to the suit is in a sense void as to him and subject to collateral attack.")). Thus, to the extent Francisco's suit constitutes an attack on the judgment, it is not, under the circumstances, an "improper" attack that deprived the trial court of jurisdiction over Francisco's claims. *Wilbourne v. HFE Dev. Corp.*, No. 03-08-00430-CV, 2009 WL 4757451, at *7 (Tex. App.—Austin Dec. 9, 2009, no pet.) (mem. op.) (holding litigant's declaratory judgment action was "impermissible collateral attack" and dismissing for lack of jurisdiction).

### The 2018 Lawsuit Defendant

Francisco alleged Sunbelt wrongfully used the default judgment to perfect a judicial lien on his property, which Sunbelt later used to collect payment from Francisco. Francisco alleges that he is entitled to recoup his payment to Sunbelt

based on principles of equity, claiming he was not the defendant in the 2018 Lawsuit, Sunbelt knew that was the case, and he paid the money under duress. Francisco thus met his burden of alleging facts that demonstrate affirmatively the trial court's jurisdiction over his claims. *Miranda*, 133 S.W.3d at 226 (stating plaintiff has burden of alleging facts that affirmatively demonstrate trial court's jurisdiction).

Sunbelt provided evidence that it argues established Francisco was *the* defendant against whom it obtained a default judgment in the 2018 Lawsuit, and thus the trial court lacked jurisdiction over Francisco's claims. Among other things, Sunbelt attached to its plea to the jurisdiction the default judgment rendered against "Francisco Herrera," the general warranty deed for Francisco's property reflecting the property was owned by "Francisco Herrera," and the abstract of judgment reflecting the judgment debtor is "Francisco Herrera" who lives at 3145 Frick Road, Houston, Texas 77038.

Assuming this evidence supports Sunbelt's jurisdictional challenge, the burden shifted to Francisco to establish there is a disputed material fact concerning jurisdiction. *Id.* Francisco attached nine documents to his response to Sunbelt's plea to the jurisdiction: (1) his affidavit, (2) Herrera, Jr.'s affidavit, (3) Sunbelt's request for admissions, (4) Sunbelt's petition in the 2018 Lawsuit with attached invoices, (5) affidavits attached to Sunbelt's motion for default judgment in the 2018 Lawsuit, (6) the return for the writ of execution issued in connection with the abstract of

28

judgment, (7) the sales contract for the sale of Francisco's property in August 2021, (8) "excerpts from the title commitment for the real estate sale that is the subject of the contract," and (9) an email chain between counsel for Francisco and Sunbelt's counsel in which Sunbelt's counsel states she disagrees with Francisco's assertion that Sunbelt's plea to the jurisdiction is a motion for summary judgment.

In his affidavit, Francisco states he did not rent any equipment from Sunbelt or authorize Herrera, Jr. to rent the property on his behalf and he thus believes the 2018 Lawsuit was against Herrera, Jr., not him. He also states that his driver's license number does not end in 7115, his social security number does not end in 7069 or 2624, and he does not have a phone number that ends in 633-2334. In his response, Francisco argued that records from the 2018 Lawsuit indicate the lawsuit was not against him because the petition in the 2018 Lawsuit contained Herrera, Jr.'s Texas driver's license number and phone number and the affidavits attached to Sunbelt's motion for default judgment refer to communications with Herrera, Jr. and contain the social security number of an unknown person.

In his affidavit, Herrera, Jr. states he is Francisco's son, he does not always use "Jr.," and sometimes he refers to himself as "Francisco Herrera." He states that his driver's license number ends in 7115, his social security number ends in 7069, and his phone number ends in 633-2334. He further states that he rented equipment from Sunbelt in 2017, Francisco was "not part of the rental transaction," and he did

not rent the equipment on his father's behalf or act as his father's agent or employee when he rented the equipment. Herrera, Jr. states he provided Sunbelt with a copy of his driver's license, gave Sunbelt his phone number, and signed a reservation for the equipment as "Francisco Herrera, Jr." He further states that he "made payments to [Sunbelt] in 2017 from an account ending in 1194 that is in my name as 'Francisco Herrera.'" According to Herrera, Jr., in 2018, Sunbelt tried to collect on the default judgment from him and his attorney "communicated on my behalf with [Sunbelt] in 2018, including with its attorney." Herrera, Jr. states it "was and is his understanding" that the 2018 Lawsuit "was against me, not my father."

Francisco also attached a copy of the 2018 Lawsuit petition in which Sunbelt asserted claims against a "Francisco Herrera" for breach of the equipment rental agreement and quantum meruit stemming from damage to the equipment, as well as the Non-Military Affidavit that Sunbelt attached to its motion for default judgment in the 2018 Lawsuit stating the defendant's social security number ends in 2624.

Considering the evidence in the light most favorable to Francisco, we hold Francisco raised a question of fact as to whether he was the defendant in the 2018 Lawsuit and the party against whom the default judgment was rendered in that suit. *See Miranda*, 133 S.W.3d at 226 (stating court considers jurisdictional evidence in light most favorable to plaintiff). Because Francisco raised a question of fact as to this issue, the trial court erred by granting Sunbelt's plea to the jurisdiction. *See id.*

30

at 227–28 (stating when jurisdictional evidence, considered in light most favorable to plaintiff raises question of fact as to jurisdictional issue, plea must be denied because issue must be resolved by fact finder).

**Interpretation of the Default Judgment**

Sunbelt argues the trial court did not err in granting its plea to the jurisdiction on Francisco's declaratory judgment claim because a declaratory judgment claim cannot be used to interpret another court's prior judgment. Francisco responds that a person can use a declaratory judgment claim in a subsequent lawsuit to contest that that person was a party to a prior lawsuit.

A declaratory judgment action "may not be used to collaterally attack, modify, or interpret a prior judgment." *Dall. Cnty. Tax Collector v. Andolina*, 303 S.W.3d 926, 930 (Tex. App.—Dallas 2010, no pet.). Declaratory relief is an inappropriate vehicle for interpreting previous judgments because "such procedure would permit a new method of review of a prior judgment, and a party would be allowed declaratory relief without the existence of a justiciable controversy already within the court's jurisdiction, resulting in an impermissible advisory opinion." *Martin v. Dosohs I, Ltd., Inc.*, 2 S.W.3d 350, 353 (Tex. App.—San Antonio 1999, pet. denied) (citing *Sw. Airlines Co. v. Tex. High-Speed Rail Auth.*, 863 S.W.2d 123, 125 (Tex. App.—Austin 1993, writ denied); *Speaker v. Lawler*, 463 S.W.2d 741, 742–43 (Tex. App.—Beaumont 1971, writ ref'd n.r.e.)).

One rationale for prohibiting the use of declaratory judgment actions to interpret judgments is "because there is no justiciable controversy—the underlying controversy has already been resolved by the final judgment." *Tex. Dep't of Ins., Div. of Workers' Comp. v. Ins. Co. of State of Penn.*, 306 S.W.3d 897, 902 (Tex. App.—Austin 2010, no pet.) (citing *Martin*, 2 S.W.3d at 353–54). Another basis for prohibiting the use of declaratory judgment actions to interpret judgments is that such an action amounts to an impermissible "collateral attack" on the prior judgment. *See Bonham State Bank v. Beadle*, 907 S.W.2d 465, 468 (Tex. 1995) ("A suit to 'interpret' a judgment is usually a guise to obtain review or modification of a judgment outside of the appellate process or an attempt to collaterally attack a judgment."); *see also Rapid Settlements, Ltd. v. SSC Settlements, LLC*, 251 S.W.3d 129, 140–41 (Tex. App.—Tyler 2008, no pet.) (holding declaratory judgment action to "interpret" prior judgment amounts to impermissible "collateral attack" on prior judgment, even though party was not expressly seeking to invalidate prior judgment). These concerns are not present in this case.

Francisco is not asking the court to interpret the default judgment. He is asking the court to find based on the evidence that he was not a party to the 2018 Lawsuit and thus not the person against whom the default judgment was entered. *See Wagner v. D'Lorm*, 315 S.W.3d 188, 195 (Tex. App.—Austin 2010, no pet.) (reversing trial court's grant of plea to the jurisdiction and holding plaintiff's

32

declaratory judgment action was "fundamentally different from 'judgment-interpretation' cases" because plaintiff "does not seek to relitigate the merits of the controversy decided by the judgment under attack, nor does he attempt to avoid the procedural limitations for attacking judgments").

The controversy in the present case is over (1) whether Francisco was a party to the 2018 Lawsuit and the defendant against whom the default judgment was rendered, (2) whether the abstract of judgment Sunbelt used to secure payment from Francisco was properly filed on his property, and (3) whether Francisco is entitled to recoup his payment to Sunbelt. These issues were not resolved by the default judgment or litigated in the 2018 Lawsuit. Moreover, for the reasons already discussed, Francisco's suit is not an attack on the default judgment, and even if it were, it is not an improper attack.

Thus, because Francisco is not using his declaratory judgment claim to interpret or challenge the default judgment, we conclude the trial court erred by granting Sunbelt's plea to the jurisdiction and dismissing Francisco's declaratory judgment claim for lack of jurisdiction.

We hold that Francisco's claims for declaratory relief, money had and received, unjust enrichment, and restitution are not moot, that his claims are not an improper collateral attack or an improper claim for declaratory judgment, and that the evidence raised a question of fact over whether Francisco is the "Francisco

33

Herrera" named as the defendant in the 2018 Lawsuit and against whom the default judgment was rendered. The trial court thus erred when it granted Sunbelt's plea to the jurisdiction.

## Conclusion

We reverse the trial court's judgment and remand the case for further proceedings.[11]


Veronica Rivas-Molloy
Justice


Panel consists of Chief Justice Adams and Justices Landau and Rivas-Molloy.

---

[11]    In light of our disposition, we need not consider Francisco's remaining arguments.